718 A.2d 222

**John Paul JONES**

v.

**STATE of Maryland.**

**No. 80, Sept. Term, 1997.**

Court of Appeals of Maryland.

Sept. 25, 1998.

266

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Appellant.

Angela M. Eaves, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

RAKER, Judge.

This case is an appeal from a finding of civil contempt for failure to pay court-ordered child support. Appellant raises two questions for our review:

I. Whether the trial court erred in accepting counsel's admission of contempt on behalf of Appellant, where the charge and its consequences were not explained to Appellant, where Appellant did not personally address the court, and where there was nothing in the record evidencing Appellant's knowledge of his due process right to contest the charges.

II. Whether the circuit court imposed an illegal disposition for civil contempt.

For the reasons expressed below, most notably that the factual basis underlying Appellant's argument is erroneous, we conclude that the trial court properly found Appellant in contempt of court. We agree with Appellant, however, that the contempt order was improper, and accordingly, we shall vacate the judgment of the circuit court.

## I.

On March 18, 1996, the Circuit Court for Baltimore County entered an order of support requiring Appellant, John Paul Jones, as natural parent of Ryan James Jones, to pay $75.00

per week in child support. When Appellant failed to make any payments, the Baltimore County Division of Child Support filed an Application for Contempt, Civil Special Proceeding Case No. 03–C–95–009806. Appellant was served with an order to show cause why he should not be held in contempt of court for failure to make the payments ordered by the circuit court. He was also advised that the show cause order was based on the application and affidavit filed by the Division of Child Support alleging arrearage of $525.00 as of May 3, 1996. The accompanying summons informed Appellant that he could be sentenced to confinement if found in contempt and advised him of his right to be represented by an attorney at the hearing. Appellant failed to appear at the scheduled hearing, a writ of body attachment issued and he was arrested and remanded to the Baltimore County Detention Center in lieu of $3,400 cash bail.

At a hearing on February 25, 1997, Jones appeared with his counsel. The following colloquy occurred:

THE COURT: [H]ow much money is due and owing on this account?

[SUPPORT OFFICER]: Mr. Jones owes three thousand six hundred and seventy-five dollars.

THE COURT: How much is he supposed to pay on this?

[SUPPORT OFFICER]: Seventy-five per week.

THE COURT: You contest the amount due and owing?

[DEFENSE COUNSEL]: No.

THE COURT: I will listen to you. Your case.

[DEFENSE COUNSEL]: Your Honor, actually there is an agreement that Mr. Jones is in contempt. He has never made a payment. The only issue then is disposition. It is my understanding that [the support officer] will be recommending work release and a purge amount of five hundred dollars. This is Mr. Jones's first time dealing with incarceration and child support. He has no money as of this moment.

In response to the court's suggestion that Jones should be sent to the Division of Correction to encourage him to come up with five hundred dollars, defense counsel explained that Jones had just left the Division of Correction for a violation of probation. Jones then addressed the court:

> You see, I was living with this lady for five years. We had a child. Two months after he was born she had left. Things kind of went downhill for me from there. *I had the money for the support.* I had a job. I love my child. I want to be with my son. And I lost my job. Everything just went awry. And I left and went to Oklahoma to get my head together because it did hurt to lose her and my son. I went to Oklahoma. I came back and I turned myself in for the violation and this to get it taken care of. And I just want to get my son back into my life. I can't do it from behind bars.

The court found Jones in contempt of court, and sentenced him to the Division of Corrections for two years, suspended on the condition that he pay $75.00 per week in support and $35.00 per week towards arrears of $3675.00 as of February 21, 1997. The court-ordered the first payment due on March 10, 1997, and further provided that should Jones fail to make any payment, the full balance at that time shall be due and he shall report to the Division of Corrections to serve his sentence. The court explained:

> In effect, if he misses one payment, sir, you let me know. I'm not going to have him make a purge amount, but if he misses one payment, the full amount of the balance will become due and owing. And we will just send him back to the Division of Correction. It is a very easy thing for me to do. All I have to do is sit up here, look at you and say bye-bye. You are the one that has to do the time.

Jones noted an appeal to the Court of Special Appeals, and we granted certiorari on our own motion before consideration by that court.

## II.

This case is a civil contempt proceeding.[1] *See State v. Roll and Scholl,* 267 Md. 714, 729, 298 A.2d 867, 876 (1973)(In Maryland, "the nature of the proceeding is determined before the time for imposing punishment is reached."). Neither party has suggested otherwise. The petition for contempt and the show cause order, initiated by the Division of Child Support and issued by the circuit court, commenced a civil contempt proceeding to recover child support payments on behalf of the mother of the child. In addition, the petition for contempt, the show cause order, the writ of summons and the contempt order of the circuit court reflected the same case number as the original proceeding, and all were captioned "Diane Ward v. John Paul Jones ... Civil Special Proceeding," identical to the original civil action seeking child support. The contempt hearing was conducted as a civil proceeding before the trial court. As the Supreme Court noted when it determined that a proceeding was one of civil contempt, "the contempt proceedings were instituted, entitled, tried, and ... treated as part of the original cause in equity." *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 445, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911).

We first consider Appellant's argument that the trial court erred in accepting defense counsel's admission of contempt on behalf of Appellant where the charge and its consequences were not explained to Appellant, he did not personally address the court, and there was nothing in the record evidencing his knowledge of his due process right to contest the charges. Appellant asserts that persons charged with civil contempt are

---

1. Numerous commentators have noted the confusion surrounding the criminal-civil distinction. Professor Dobbs has concluded that

> a reviewing court could reverse, whatever classification is used, simply because procedure and sentence were not compatible. It is enough to say that a determinate ("criminal") sentence cannot be meted out where criminal-type protections are not afforded in the procedure. It is not necessary to say more.

Dan B. Dobbs, *Contempt of Court: A Survey,* 56 CORNELL L.REV. 183, 246 (1971).

entitled to the procedural protections accorded a criminal defendant in a violation of probation proceeding. *See Hersch v. State,* 317 Md. 200, 562 A.2d 1254 (1989). He argues that at a minimum, due process requires that the alleged civil contemnor personally admit the allegations of contempt, and that the record demonstrate he understands the nature of those allegations and the consequences of such an admission. He maintains that when an alleged contemnor is facing incarceration counsel cannot "validly waive his or her client's right to contest the allegations of contempt, thus immediately and directly placing the client in jeopardy of incarceration."

■ In support enforcement actions, contempt proceedings are guided by Maryland Rule 15–207. Rule 15–207(e), effective January 1, 1997, delineates the circumstances under which a court may make a finding of constructive civil contempt in support enforcement actions.[2] The rule provides, in pertinent part:

> (2) Petitioner's burden of proof. Subject to subsection (3) of this section, the court may make a finding of contempt if the petitioner proves by clear and convincing evidence that the alleged contemnor has not paid the amount owed, accounting from the effective date of the support order through the date of the contempt hearing.
>
> (3) When a finding of contempt may not be made. The court may not make a finding of contempt if the alleged contemnor proves by a preponderance of the evidence that ... from the date of the support order through the date of the contempt hearing the alleged contemnor (i) never had the ability to pay more than the amount actually paid and (ii) made reasonable efforts to become or remain employed or otherwise lawfully obtain the funds necessary to make payment.

---

**2.** The Committee note to Rule 15–207 makes the point that "[s]ection (e) modifies the holding in *Lynch v. Lynch,* 342 Md. 509 [677 A.2d 584] (1996), by allowing a court to make a finding of constructive civil contempt in a support enforcement action even if the alleged contemnor does not have the present ability to purge." Appellant presents no challenge to the new rule.

(4) Order. Upon a finding of constructive civil contempt for failure to pay spousal or child support, the court shall issue a written order that specifies (A) the amount of the arrearage for which enforcement by contempt is not barred by limitations, (B) any sanction imposed for the contempt, and (C) how the contempt may be purged.

In other words, in order to establish civil contempt in non-support matters, the moving party must establish by clear and convincing evidence that a prior court order directed the party to pay the support or alimony and the alleged contemnor failed to make the court-ordered payments. The contemnor may defend by proving, by a preponderance of the evidence, that the failure to pay was not an act of willful or contumacious non-compliance. If the court finds a contempt, the court must issue a written contempt order that specifies, in clear language, the amount of arrearage due, the sanction for the contempt, and what the contemnor must do to purge him or herself of the contempt.

▇▇▇ Appellant has no quarrel with Rule 15–207(e). His complaint is addressed to the procedures employed by the trial court. A defendant in a civil contempt proceeding is entitled to procedural protections, but those protections do not include all the rights that Appellant claims.[3] *See International al Union, UMWA v. Bagwell,* 512 U.S. 821, 830–31, 114 S.Ct. 2552, 2559, 129 L.Ed.2d 642 (1994)(stating that with respect to certain civil contempts, fewer procedural protections are required because they are non-punitive and avoidable, but under some circumstances, civil procedural protections may be insufficient and criminal procedural protections may be necessary and appropriate). Md. Rule 15–206 and 15–207 set forth important safeguards and procedures to be followed in constructive civil contempt proceedings. A defendant in a civil contempt proceeding is entitled to receive notice of the alleged violation, if incarceration is sought, the right to be represented

---

**3.** Our discussion is limited only to procedures required for indirect or constructive civil contempt, that is, those occurring outside the courtroom. We do not address direct contempts.

by counsel and appointed counsel if indigent, and an opportunity to be heard on the merits of the charge of contempt. Generally, when coercive imprisonment is imposed to enforce rights due others, and it is imposed only for non-punitive purposes, due process does not require the extension of all criminal proceeding safeguards. Comment, *The Coercive Function of Civil Contempt*, 33 U. Chi. L.Rev. 120, 128 (1965).

Appellant's claim of denial of due process rests upon the validity of his premises that the charges were not explained to him, that he did not personally address the court, that the record did not show he knew of his right to contest the charges, and that the court's finding of contempt rested upon his counsel's admission. The facts in this case do not support Appellant's argument.

Appellant was served with the petition setting forth the precise nature of the contempt, along with a show cause order. In the show cause order and accompanying summons, Appellant was informed of the nature of the charges, the possibility of incarceration, and the opportunity to contest the charges. He was represented by counsel. Moreover, the court did not accept counsel's statement as an admission of contempt. The court accepted counsel's admission that Appellant had failed to pay. Counsel's statement simply satisfied the element of non-payment of the ordered child support.[4] Appellant personally admitted that, following the order to pay, he had the money for child support, he had a job, he did not pay because he was upset, and he "took off" to get his "head together." Appellant's admission satisfied the element that he had the ability in the past to pay the ordered support and that he failed to pay. Based on all the evidence before the court, appellant properly was found in contempt.

In addition to Appellant's faulty factual argument, his reliance on *Hersch* is misplaced. In *Hersch*, we considered the

---

4. We note that counsel's statement that Appellant had never made a payment was not the only evidence before the court of Appellant's failure to pay. The support officer representing the Division of Child Support testified to Mr. Jones's arrearage as of that day.

question of whether a waiver of the right to a hearing and to adequate proof of a violation of probation may be accomplished by a defendant's attorney, or whether a waiver of that right requires a knowing and intelligent waiver that would satisfy a waiver standard under *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). We began with the recognition that violation of probation proceedings are civil actions. *Hersch,* 317 Md. at 206, 562 A.2d at 1257. This fact, however, was not dispositive in determining the rights of a probationer. Writing for the Court, Judge McAuliffe observed:

> The touchstone of due process is fundamental fairness. When the *immediate consequence* of a violation of probation may well be imprisonment, often for a significant period of time, we believe a *Johnson v. Zerbst* standard must apply to the waiver of the important right that the probationer has to put the State to its proof.

*Id.* at 208–09, 562 A.2d at 1258 (emphasis added). We imposed this higher standard of waiver in violation of probation proceedings because we concluded that on balance, this standard "goes a long way toward ensuring essential fairness in an important proceeding while imposing only a small additional burden upon the trial judge and permitting the proceeding to remain essentially informal." *Id.* at 209, 562 A.2d at 1258.

Under Appellant's analysis, he is entitled to the procedural protections that defendants enjoy in violation of probation proceedings because, in his view, the court's finding of contempt exposes him to "the threat of immediate incarceration." He is incorrect.

 Under Rule 15–207, the finding of civil contempt does not pose an immediate threat of incarceration to the contemnor. Maryland law has long required a distinct regimen of substantive and procedural safeguards for persons found to be in civil contempt of a support enforcement order. "Only if [the contemnor] fails to show [a present] inability [to pay] is ... subsequent imprisonment permitted." *Lynch v. Lynch,* 342 Md. 509, 521–22, 677 A.2d 584, 590 (1996). *See*

*Elzey v. Elzey,* 291 Md. 369, 374, 435 A.2d 445, 448 (1981); *McDaniel v. McDaniel,* 256 Md. 684, 692–93, 262 A.2d 52, 57 (1970); *Speckler v. Speckler,* 256 Md. 635, 637, 261 A.2d 466, 467 (1970); *McCabe v. McCabe,* 210 Md. 308, 314, 123 A.2d 447, 450 (1956); *Schwartzman v. Schwartzman,* 204 Md. 125, 135, 102 A.2d 810, 815 (1954); *Oles Envelope Corp. v. Oles,* 193 Md. 79, 92, 65 A.2d 899, 905 (1949); *Dickey v. Dickey,* 154 Md. 675, 681, 141 A. 387, 390 (1928). The procedural component to this restrictive requirement is that any party judged to be a civil contemnor must be afforded the opportunity to show a present inability to purge the contempt: "Where the order calls for the payment of money, the defendant is entitled to the 'opportunity to show that he [or she] had neither the estate nor the ability to pay his [or her] obligation.'" *Lynch,* 342 Md. at 521, 677 A.2d at 590 (alterations in original) (quoting *Johnson v. Johnson,* 241 Md. 416, 420, 216 A.2d 914, 917 (1966)).

■ This requirement is not changed by the adoption of Md. Rule 15–207(e). Although a finding of contempt under 15–207(e) requires only a determination that the alleged contemnor had the ability in the past to comply with the court order, unless and until the contemnor has been "given an opportunity to show that he ha[s] neither the estate nor the ability to pay his obligation and fail[s] to make such a showing, he should not [be] incarcerated." *Johnson,* 241 Md. at 420, 216 A.2d at 917 (1966), *quoted in Lynch,* 342 Md. at 513, n. 1, 677 A.2d at 586, n. 1, and *Elzey,* 291 Md. at 374, 435 A.2d at 448. In the instant case, the trial court made no provision in the contempt order for the Appellant's requisite opportunity to show a contemporaneous lack of ability to pay, were he to fail to comply in the future. In sharp contrast to a probationer in a criminal case, Appellant could not have been subject to immediate incarceration.

■ We recognize that there may be cases, unlike the one before us, where the trial court makes the finding that a contemnor indeed has the present ability to pay. The criminal probationer and the civil contemnor are nonetheless signifi-

cantly different. Imprisonment of the civil contemnor is conditional. It is "based entirely upon the contemnor's continued defiance," *Shillitani v. United States*, 384 U.S. 364, 371, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966), and thus, the civil contemnor is said to hold the keys to the jailhouse door, and may terminate the incarceration any time he or she satisfies the purge provision. *Id.* at 368, 86 S.Ct. at 1534. *See Lynch*, 342 Md. 509, 519, 677 A.2d 584, 589 (1996) (before being incarcerated, a civil contemnor must have "the keys to the prison in his or her pocket," that is, an opportunity to purge the contempt). Not so for the criminal defendant in a violation of probation proceeding. *See* Comment, *Contempt of Court: Wisconsin's Erasure of the Blurred Distinction Between Civil and Criminal Contempt*, 66 MARQ. L.REV. 369, 381 (1983)(extensive due process protections available to criminal defendants generally unnecessary for civil contempt proceedings because contemnor can avoid any sanction by complying with the court's order). Accordingly, when the alleged civil contemnor in a support enforcement action is represented by counsel and has been informed that incarceration is a possibility, the trial judge is not required to explain the nature of contempt proceedings, available defenses, or the consequences of a finding of contempt.

### III.

We turn next to the sanction imposed by the trial court. The contempt order contained the following sanction:

> THAT, the Defendant, JOHN PAUL JONES, is found guilty of contempt and is sentenced to the Division of Corrections for two years; sentence is suspended on condition that he pay $75.00 per week in support and $35.00 per week towards arrears of $3,675.00 as of 2–21–97; the first payment is due March 10, 1997 and *should the Defendant, JOHN PAUL JONES, fail to make any payment the full balance at that time shall be due and he shall report to the Division of Corrections to serve his sentence.* (Emphasis added).

■ As we have indicated, this proceeding is a civil contempt proceeding as distinguished from a criminal contempt action. Appellant contends that he received an improper "sentence." We agree. The contempt order imposed an illegal sanction for civil contempt because (1) the sentence is a determinate two-year sentence which does not include a purge clause, and (2) the order did not provide Appellant with the opportunity, before incarceration, to show his inability to comply with the court-ordered payments.

■ Where a sanction is a determinate sentence of two years in jail, suspended on condition that the contemnor obey a court order forthwith, is the sentence criminal or civil? Sanctions for contempt ordinarily fall into three general categories: (1) determinate sanctions, which are criminal sanctions, such as a jail sentence of one year; (2) coercive sanctions, which are civil sanctions, such as imprisonment until the contemnor complies with an order of the court or a fine to be applied until the contemnor complies; and (3) remedial sanctions, such as a civil fine payable to the plaintiff to compensate the plaintiff for losses suffered as a result of the contemnor's non-compliance.[5] DAN B. DOBBS, LAW OF REMEDIES § 2.8(2), at 135 (2d ed.1993).

---

5. The United States Supreme Court considered the nature of a sanction in *Hicks v. Feiock*, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). Hicks was held in contempt for failure to pay court-ordered child support on five of nine counts and sentenced to five days in jail on each count, to be served consecutively. The sentence was suspended and Hicks was placed on three years probation, on the condition that he make his ordered monthly payments and that he pay $50.00 per month on the arrears. *Id.* at 626–28, 108 S.Ct. at 1427. The California statute placed upon the defendant the burden of showing his inability to pay, a permissible burden in a civil case, but not in a criminal one. Addressing the suspended sentence, the Court noted:

[T]he fact that a contemnor has his sentence suspended and is placed on probation cannot be decisive in defining the civil or criminal nature of the relief, for many convicted criminals are treated in exactly this manner for the purpose (among others) of influencing their behavior. What is true of the respondent in this case is also true of any such convicted criminal: as long as he meets the conditions of his informal probation, he will never enter the jail. Nonetheless, if the sentence is a determinate one, then the punishment is

In the instant case, the trial court imposed a determinate sentence—two years in the Division of Corrections—suspended on the condition that he comply with the court order that he pay $75.00 per week in support and $35.00 per week towards the arrears of $3675.00. Although the sentence, conditioned on compliance in the future, when first imposed certainly was coercive, upon non-compliance, the sentence was a determinate one, lacking any purge provision. Remarkably, the trial judge announced that he was not going to have Jones make a purge amount. In determining whether the sanction was coercive, we look at the time the sentence actually may be executed, and not only at the time it is first imposed. We conclude that Appellant's sentence providing for a determinate period of incarceration upon his failure to pay was not coercive and was, in fact, punitive. The sentence was in large measure a criminal sentence which cannot be imposed without affording the defendant all the due process protections applicable to criminal contempt defendants. *See Hicks v. Feiock*, 485 U.S. 624, 637, 108 S.Ct. 1423, 1432, 99 L.Ed.2d 721 (1988); *State v. Roll and Scholl*, 267 Md. 714, 730–31, 298 A.2d 867, 877 (1973). In addition, the contempt order required that Appellant report to serve the prison sentence without any determination of his present ability to purge the contempt.

Only coercive and remedial sanctions may be imposed in civil contempt proceedings because the purpose of

criminal in nature, and it may not be imposed unless federal constitutional protections are applied in the contempt proceeding.

*Id.* at 637, 108 S.Ct. at 1432 (footnote omitted). The problem with the sentence, the Court noted, was that the sanction imposed upon the defendant required him to pay $50.00 a month on the arrearage, and that compliance with this condition would have satisfied the arrearage before the expiration of his probationary term. The Court concluded: "What is unclear is whether the ultimate satisfaction of these accumulated prior payments would have purged the determinate sentence imposed on respondent.... If the relief imposed here is in fact a determinate sentence with a purge clause, then it is civil in nature." *Id.* at 640, 108 S.Ct. at 1434 (citations omitted). The Court remanded the case for the trial court to clarify what would happen if the arrearage was satisfied during the probationary period. *Id.* at 640–41, 108 S.Ct. at 1434.

civil contempt sanctions is "to preserve and enforce the rights of private parties to a suit and to compel obedience to orders and decrees primarily made to benefit such parties. These proceedings are generally remedial in nature and are intended to coerce future compliance." *Roll & Scholl,* 267 Md. at 728, 298 A.2d at 876. *See Lynch v. Lynch,* 342 Md. 509, 519, 677 A.2d 584, 589 (1996); *Middleton v. Middleton,* 329 Md. 627, 643, 620 A.2d 1363, 1371 (1993). *See also Rutherford v. Rutherford,* 296 Md. 347, 355, 464 A.2d 228, 233 (1983); *McDaniel v. McDaniel,* 256 Md. 684, 689, 262 A.2d 52, 55 (1970). Imprisonment, when ordered as a civil sanction, "is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do." *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 442, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). It is important to distinguish between criminal and civil contempt because "[t]he kind of trial procedure used in a contempt hearing must correlate with the sanction: if the sanction is 'criminal,' then the constitutional and procedural rules applied to criminal trials must be observed." DOBBS, *supra,* § 2.8(3), at 138. *See International Union, UMWA v. Bagwell,* 512 U.S. 821, 826, 114 S.Ct. 2552, 2556, 129 L.Ed.2d 642 (1994); *United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993); *Roll & Scholl,* 267 Md. at 730–31, 298 A.2d at 877.

Rule 15–207(e)(4) provides, in pertinent part:

> If the contemnor does not have the present ability to purge the contempt, the order may include directions that the contemnor make specified payments on the arrearage at future times and perform specified acts to enable the contemnor to comply with the direction to make payments.

As we have previously indicated, incarceration cannot be imposed upon a civil contemnor for wilfully failing to comply with a court order unless the contemnor has been given the opportunity yet has failed to show the present inability to purge the contempt. *Lynch,* 342 Md. at 521–22, 677 A.2d at 590.

■ Any order imposing a sanction upon a civil contemnor must contain a purge provision with which the contemnor has the ability to comply. *Elzey v. Elzey,* 291 Md. 369, 374, 435 A.2d 445, 447 (1981). *See Lynch,* 342 Md. at 519–20, 677 A.2d at 589–90; *Roll & Scholl,* 267 Md. at 728, 298 A.2d at 876. A purge provision permits a defendant to avoid the sanction by complying with the court's order. It also affords the defendant the opportunity to exonerate him or herself, that is, " 'to rid him or herself of guilt and thus clear himself of the charge.' " *Lynch,* 342 Md. at 520, 677 A.2d at 589–90 (quoting *Herd v. State,* 37 Md.App. 362, 365, 377 A.2d 574, 576 (1977)). In this way, a civil contemnor is said to have the keys to the prison in his own pocket. *In re Nevitt,* 117 F. 448, 461 (8th Cir.1902).

■ A court may not incarcerate a civil contemnor unless he or she has the present ability to purge the contempt. Before incarceration is imposed, the contemnor must be provided with the opportunity to show that he or she is unable, rather than unwilling, at that time, to make the court-ordered payments. Again, the court may not incarcerate the civil contemnor "[u]ntil he [has been] given an opportunity to show that he had neither the estate nor the ability to pay his obligation and failed to make such a showing." *Johnson v. Johnson,* 241 Md. 416, 420, 216 A.2d 914, 917 (1966). *See also Rutherford,* 296 Md. at 357, 464 A.2d at 233 (holding that failure to comply with a support order in the past, even in bad faith, does not justify incarceration of a *civil* contemnor if he is presently unable to comply with the order); *Soldano v. Soldano,* 258 Md. 145, 146, 265 A.2d 263, 264 (1970) ("[I]mprisonment may be avoided by a showing that one has neither the money nor ability to pay."). Because the contemnor's ability to comply is the key to the jail cell, without the present ability to pay, the contemnor holds no key to the jailhouse door. *See Bowen v. Bowen,* 471 So.2d 1274, 1277 (Fla.1985). If a defendant is unable pay a purge provision, no amount of time in prison will induce compliance.

■ The sanction partakes of a criminal sentence if the term of imprisonment does not contain a purge provision with which the contemnor has the ability to comply. The object of criminal proceedings is to punish the contemnor for past misconduct irrespective of whether the contemnor is capable of remedying it. *Lynch,* 342 Md. at 520, 677 A.2d at 590. A criminal sentence cannot be imposed upon a civil contemnor because the imposition of a criminal sanction requires observance of the constitutional and procedural rules applied to criminal trials. *See Bagwell,* 512 U.S. at 826, 114 S.Ct. at 2556; *Roll & Scholl,* 267 Md. at 730–31, 298 A.2d at 877; *see also* DOBBS, *supra,* § 2.8(3), at 138.

In this case, the record clearly supports the conclusion that the contempt order imposed a suspended sentence, with a determinate jail term, and that it contained no purge provision in the event the suspension was revoked. The contempt order imposed a suspended sentence of imprisonment in order to coerce Appellant to comply with the original court order for child-support as well as to pay the arrears. Appellant could therefore avoid imprisonment by making monthly payments, which initially provided Appellant with the means of purging the contempt. The contempt order was fatally deficient, however, because it failed to provide Appellant with the opportunity to show, prior to incarceration, that he was unable to make payments. The court order required Appellant to report *directly* to the Department of Corrections to serve the determinate period of two years upon failure to pay, precluding any consideration of Appellant's ability to pay the court-ordered payments prior to incarceration.[6] Most importantly, the contempt order did not provide any means by which Appellant could purge himself once the jail sentence was imposed. There is no provision in the order which would make the time to be served in jail contingent on any future conduct or any provision empowering Appellant to get out of

---

6. Although it is unlikely that the detention center would have accepted Appellant without a written order of commitment, the contempt order made no provision for a hearing in the event Appellant failed to pay as required.

jail once the sentence was imposed. This is in the nature of a criminal sentence which, when imposed, would punish Appellant for his misconduct without regard to whether he could remedy the harm. *See Lynch,* 342 Md. at 520, 677 A.2d at 590.

The result in this case, were the trial court's sanction allowed to stand, would be similar to the one overruled in *Gompers,* 221 U.S. at 449, 31 S.Ct. at 501. There the Supreme Court said:

> There was therefore a departure—a variance between the procedure adopted and the punishment imposed, when, in answer to a prayer for remedial relief, in the equity cause, the court imposed a punitive sentence appropriate only to a proceeding at law for criminal contempt. The result was as fundamentally erroneous as if in an action of "A. *vs.* B. for assault and battery," the judgment entered had been that the defendant be confined in prison for twelve months.

We remand this case to the Circuit Court for Baltimore County to issue a written order that specifies the amount of the arrearage for which enforcement by contempt is not barred by limitations, the sanction imposed for the contempt, and what Jones must do to purge himself of the contempt. Before Jones may be incarcerated in this civil contempt proceeding, he must be provided the opportunity to show, and yet fail to show, that he is financially unable at that time to purge the contempt.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY BALTIMORE COUNTY.*