773 A.2d 1094

**Eugene Anthony REDDEN,**

v.

**DEPARTMENT OF SOCIAL SERVICES, et al.**

**No. 2163, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

June 13, 2001.

Julia Doyle Bernhardt, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Mary C. Murphy, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellees.

Argued before DAVIS, HOLLANDER, JAMES R. EYLER, JJ.

DAVIS, Judge.

Appellant Eugene Anthony Redden, Sr., was ordered to pay child support for his minor children in two separate cases. Appellant failed to meet his child support obligations and, in December 1999, the children's mothers, Karen R. Redden and Felicia Rowena Gaines, and the Maryland State Department of Social Services (collectively, "appellees") filed a petition in each case for contempt. On August 14, 2000, a combined hearing in both cases in the Circuit Court for Baltimore County was held and appellant was found in contempt. The court ordered appellant to make regular support payments and make good a bad check, set a contempt purge of $1,000, and scheduled another hearing for November 15, 2000. On that date, the court sentenced appellant to two concurrent prison terms of five months, with work release recommended. Appellant timely appealed from this judgment.

Appellant does not contest the finding of contempt, but presents one issue for our review,[1] which we separate into two component issues:

 I. Did the court err in holding appellant on a body attachment from June 26, 2000 until his hearing on August 14, 2000?

---

**1.** Appellant framed the issue on appeal as "Whether the civil contempt proceedings violated Maryland Rule 15–207 and the requirements of due process."

II. Did the trial court err in sentencing appellant to incarceration?

We answer both questions in the affirmative. Therefore, we shall affirm the finding of contempt but otherwise reverse the judgment of the lower court.

## FACTUAL BACKGROUND

Appellant was married to Karen R. Redden ("Redden") on March 6, 1981. The marriage ended in divorce on February 9, 1987. Appellant and Redden had two children together: Eugene A. Redden, Jr., born February 20, 1981, and Keirsten B. Redden, born December 2, 1983. By consent order entered November 16, 1982, appellant was obligated to pay child support. Appellant failed to meet this obligation and, on December 7, 1999, Redden applied for contempt.

Appellant also fathered a child by Belinda Rowena Gaines. Kyiesha Martika Redden was born September 2, 1986 and Gaines filed a paternity suit on January 29, 1987. Appellant was adjudged to be Kyiesha's father on May 7, 1987 and ordered to pay child support by an order entered on December 16, 1987. Appellant failed to meet this obligation as well and, on December 10, 1999, Gaines filed a petition for contempt.

The court issued a show cause order in each case, setting a hearing for January 19, 2000. When appellant failed to appear for this hearing, the court ordered in each case that a writ of body attachment for appellant be issued. The order in the Redden case, filed on June 5, 2000, provided that appellant be released upon his posting of a bond or payment of arrearage, both in the amount of $3,110 in cash. The order in the Gaines case was identical save for the bond and arrearage amounts, which were $1,084.28. Appellant was taken into custody on June 26, 2000 on both body attachments. When appellant appeared before the Circuit Court for Baltimore County the same day, the court set bail at $3,110 in the Redden case and at $1,084.28 in the Gaines case. The court remanded appellant to the Baltimore County Detention Cen-

ter, where he was held in custody until the hearing on August 14, 2000.

A hearing in both cases was held on August 14, 2000. Appellant admitted through counsel to being in contempt. Counsel for the Department of Social Services (DSS) proffered that, as to Redden's case, appellant was obligated to pay $50 in support and $30 in arrearages, both semi-monthly. Arrearages as of July 30, 2000 were $1,184.28. Appellant had made no payments in 2000 and only four payments in 1999. With respect to Gaines's case, appellant was obligated to pay weekly $30 in support and $20 in arrearages. Arrearages were $3,370.82 as of August 9, 2000. The last payment made by appellant in that case was $150 on June 9, 1999. Appellant paid $400 on January 24, 2000 with a "bad check"; he took no exception to this proffer.

Appellant's counsel proffered that appellant had been incarcerated for driving while intoxicated from March 16 to June 24, 2000. From June 26, 2000, to the date of the current hearing, he was incarcerated on the body attachment in the present case. He was paying an $865 monthly mortgage on his home in Aberdeen and was supporting a thirteen-year-old son.[2] Appellant had applied for several jobs before he was incarcerated, but was unable to attend the interviews. It appears that appellant had not been employed since the fourth quarter of 1999.

The court found appellant in civil contempt and ordered him to pay the existing periodic child support in each case. It set a hearing for November 15, 2000, by which time it wanted "to see some lump sum payment towards those arrears ...," preferably in the amount of $1000." Based on a statement by appellant that the bad check was actually in the amount of $800, the court also ordered appellee to "address" the $800 he owed DSS.

At the hearing on November 15, 2000, appellant admitted that he had made no payments since the last hearing. He had

---

2. It appears that this son is a fourth child, not Eugene A. Redden, Jr.

lost his home to foreclosure, was staying with friends, and was receiving governmental rent assistance, food stamps, and prescription assistance. Appellant stated that he had had several job interviews for "upper management level" positions, but had not been called for second interviews. No one would hire him for "smaller jobs" because he had three years of college credit and employers were afraid he would be unsatisfied. Appellant's counsel proffered that appellant "does not have any assets from which he could satisfy any purge." The court found appellant in civil contempt and sentenced him to two concurrent terms of five months in the Baltimore County Detention Center. The court recommended work release and set the purge amount at $500 in each case.

## LEGAL DISCUSSION

### I

Appellant first contends that the lower court erred in holding him on a body attachment from June 26, 2000 until his hearing on August 14, 2000. The body attachment was issued after he missed the March 16, 2000 hearing while incarcerated on an unrelated criminal charge. He argues that this procedure violated both due process and Maryland Rule 15–207 (2001), which governs civil contempt proceedings. The DSS argues that this issue is not preserved for our review. There is indeed no indication in the record that appellant's detention was ever challenged. Moreover, because there is no transcript of the June 26, 2000 bond hearing, it is unclear whether the court was informed at that stage that appellant had missed the hearing due to his incarceration. Nevertheless, we shall address this issue and find the procedure to be in violation of Md. Rule 15–207 (2001).

Maryland Rule 8–131(a) (2001), in pertinent part, provides:

Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may

decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

As the Court of Appeals stated in *Office of the Governor v. Washington Post Co.*, 360 Md. 520, 759 A.2d 249 (2000), however, "because the second sentence of the above-quoted rule begins with the word '[o]rdinarily,' both the Court of Special Appeals and this Court each have independent discretion to excuse the failure of a party to preserve an issue for appellate review." *Id.* at 532 n. 5, 759 A.2d 249 (internal quotation omitted). In the case *sub judice*, we find appellant's pre-hearing incarceration troubling and we therefore exercise our discretion to address this issue despite its non-preservation.

■■■ We turn now to the proper construction of Md. Rule 15–207. When construing the Maryland rules, we follow a procedure similar to that used when construing a statute. *Holmes v. State*, 350 Md. 412, 422, 712 A.2d 554 (1998).

First, we must examine the words of the rule, giving them their ordinary and natural meaning. Where the language of the rule is clear and unambiguous, our analysis ends.... The ultimate goal of this Court is to give the rule a reasonable interpretation in tune with logic and common sense.

*Id.* (citations and internal quotations omitted).

Maryland Rule 15–207 mandates the procedure to be followed in a civil contempt hearing. Subsection (c)(2) provides:

If the alleged contemnor fails to appear personally at the time and place set by the court, the court may enter an order directing a sheriff or other peace officer to take custody of and bring the alleged contemnor before the court or judge designated in the order. If the alleged contemnor in a civil contempt proceeding fails to appear in person or by counsel at the time and place set by the court, the court may proceed ex parte.

This subsection gives the court two options when an alleged civil contemnor fails to appear before it. The court may either

"enter an order directing a sheriff ... to take custody of and bring the alleged contemnor before the court," known as a "body attachment," *see* Md. Rule 1–202(c) (2001), or "proceed ex parte." Md. Rule 15–207(c)(2) (2001).

Subsection (e) focuses specifically on child or spousal support enforcement actions and provides that the alleged contemnor may be found in contempt upon a showing by clear and convincing evidence that he or she has not paid the amount owed. *Id.* at 15–207(e)(2) (2001). If the court makes a finding of contempt, it must issue an order specifying the amount of arrearage, the sanction, and how the contempt may be purged. *Id.* at 15–207(e)(4) (2001). The court may not make a finding of contempt, however, if the alleged contemnor proves that enforcement is barred by limitations or that he or she has never had the ability to pay despite his or her best efforts to obtain the funds necessary. *Id.* at 15–207(e)(3) (2001). In addition to the safeguards provided by Rule 15–207, the Court of Appeals has held that

[a] court may not incarcerate a civil contemnor unless he or she has the present ability to purge the contempt. Before incarceration is imposed, the contemnor must be provided with the opportunity to show that he or she is unable, rather than unwilling, at that time, to make the court-ordered payments.

*Jones v. State,* 351 Md. 264, 281, 718 A.2d 222 (1998).

 In the case *sub judice,* the court's use of the body attachment amounted to a summary version of the civil contempt proceedings outlined in Rule 15–207(e). Appellant was held in the Baltimore County Detention Center for forty-nine days, but could secure his freedom upon payment of $4,194.28 in cash, the combined arrearage in the two child support enforcement actions.[3] Appellant's incarceration was thus a *de facto* contempt finding, complete with a sanction of incarceration and a purge provision, but without the procedural safe-

---

3. The orders providing for writs of body attachment stated that this was the combined arrearage as of their filing.

guards provided by the common law, *see Jones,* 351 Md. at 281, 718 A.2d 222, or contained in Rule 15–207(e). The Court of Appeals warned against such procedural shortcuts in *Thrower v. State,* 358 Md. 146, 160–61, 747 A.2d 634 (2000):

> Although incarceration for non-support—the ultimate permissible sanction—does not constitute imprisonment for debt, it obviously impinges upon the liberty interest that parents have under the Fourteenth Amendment to the U.S. Constitution, under the Maryland Constitution, and under Maryland common law, and thus must comport with both procedural due process and with the non-Constitutional procedures ordained by this Court. . . . [I]t may be frustrating to judges and masters to have to deal with people who appear to be deliberately ignoring their child-support obligations, by spending available funds for other purposes, by voluntary impoverishment, by refusing to obtain steady employment, or by other techniques—people who return time and again with excuses that the judge or master finds incredible or inadequate and who thus seem to flaunt their defiance of properly entered court orders. Nonetheless, because a person's liberty is at stake and because it is a judicial proceeding, both the form and substance of due process and proper judicial procedure must be observed. Shortcuts that trample on these requisites and conclusions that are based on hunch rather than on evidence are not allowed.

(Citations omitted.)

■■ Moreover, as we stated in *Reed v. Foley,* 105 Md. App. 184, 659 A.2d 325 (1995), " '[t]he purpose of bail is to assure the attendance of the accused at the trial.' *Simmons v. Warden,* 16 Md.App. 449, 450, 298 A.2d 199 (1973). A non refundable bail toward an arrearage violates this principle." *Id.* at 199, 659 A.2d 325 (footnote omitted). While the court's order contained a standard bail provision in addition to the *de facto* purge provision, we fail to see why any monetary incentive was needed to assure appellant's attendance at the hearing on August 14, 2000. Appellant failed to attend the earlier hearing only because he was incarcerated on an unrelated

criminal charge. The record shows that appellant had been the target of eight applications for contempt in the Redden and Gaines cases prior to the one giving rise to this appeal and each was dismissed after a hearing. While this indicates that appellant has been delinquent in his child support obligations, it also establishes a history of compliance with the court's show cause orders. The court had no reason to fear that appellant would not appear at the hearing on August 14, 2000.

The lower court's incarceration of appellant on a body attachment from June 26, 2000 until his hearing on August 14, 2000 violated the procedural safeguards afforded to alleged civil contemnors by the common law and Md. Rule 15–207.[4]

## II

Appellant's second contention is that the trial court erred in sentencing him to incarceration after finding him in civil contempt. DSS concedes this issue on appeal.

Maryland Rule 15–207(e) (2001) governs proceedings for civil contempt based on failure to pay spousal or child support. It provides in relevant part:

(2) Petitioner's Burden of Proof. Subject to subsection (3) of this section, the court may make a finding of contempt if the petitioner proves by clear and convincing evidence that the alleged contemnor has not paid the amount owed, accounting from the effective date of the support order through the date of the contempt hearing.

(3) When a Finding of Contempt May Not Be Made. The court may not make a finding of contempt if the alleged contemnor proves by a preponderance of the evidence that (A) from the date of the support order through the date of the contempt hearing the alleged contemnor (i) never had the ability to pay more than the amount actually paid and

---

4. Our holding is not intended to preclude the overnight or brief detention of the subject of a body attachment in order that proper administrative procedures may be completed or appropriate proceedings, unrelated to the civil contempt, may be instituted.

(ii) made reasonable efforts to become or remain employed or otherwise lawfully obtain the funds necessary to make payment, or (B) enforcement by contempt is barred by limitations as to each unpaid spousal or child support payment for which the alleged contemnor does not make the proof set forth in subsection (3)(A) of this section.

Appellant admitted at the August 14, 2000 hearing that he was in contempt of the child support orders. At the November 15, 2000 hearing, he acknowledged that he remained in contempt. We therefore affirm the portion of the court's judgment finding appellant in contempt.

Appellant's challenge of the court's ruling focuses on the five-month prison sentence. The Court of Appeals addressed the propriety of prison sentences for civil contemnors in *Jones v. State*, 351 Md. 264, 280–81, 718 A.2d 222 (1998):

As we have previously indicated, incarceration cannot be imposed upon a civil contemnor for wilfully failing to comply with a court order unless the contemnor has been given the opportunity yet has failed to show the present inability to purge the contempt.

Any order imposing a sanction upon a civil contemnor must contain a purge provision with which the contemnor has the ability to comply. A purge provision permits a defendant to avoid the sanction by complying with the court's order. It also affords the defendant the opportunity to exonerate him or herself, that is, " 'to rid him[self] or herself of guilt and thus clear himself [or herself] of the charge.' " In this way, a civil contemnor is said to have the keys to the prison in his own pocket.

A court may not incarcerate a civil contemnor unless he or she has the present ability to purge the contempt.

(Citations omitted.) In the case *sub judice,* the only information the court possessed on the subject of appellant's ability to pay any purge amount came from appellant's unsworn statements and his counsel's proffers. Appellant's only sources of income as of the hearing were food stamps and government assistance with rent and prescription costs. In addition, ap-

pellant's counsel proffered that appellant "does not have any assets from which he could satisfy any purge."

■ The court's imposition of a prison term was in error because appellant demonstrated that he lacked the present ability to pay a purge. We therefore reverse this portion of the court's judgment, leaving the case in the same position as that in *Rawlings v. Rawlings*, 362 Md. 535, 573, 766 A.2d 98 (2001):

> On remand, evidence may be adduced to establish either a proper purge amount or, if a present inability to pay a purge amount exists, a proper order pursuant to [Md. Rule] 15–207(e)(4), may be fashioned with "directions that ... [appellant] make specified payments on the arrearage at future times and perform specified acts to enable ... [appellant] to comply with the direction to make payments."

Alternatively, if the court finds that appellant's inability to comply with its order to pay child support

> was caused by a deliberate effort or a wilful act of commission or omission by ... [appellant] committed with the knowledge that it would frustrate the order of the court, the civil contempt proceeding should be terminated and new proceedings may be instituted which can result in a finding of criminal contempt.

*Id.* at 566 n. 29, 766 A.2d 98 (quoting *State v. Roll*, 267 Md. 714, 730, 298 A.2d 867 (1973)).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED AS TO FINDING OF CONTEMPT AND REVERSED AS TO SANCTION OF IMPRISONMENT; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEES.**