774 A.2d 1123

Darryl E. WILSON,

v.

**Tina HOLLIDAY, Leslie Washington, and Antoria Dixon.**

No. 97, Sept. Term, 2000.

Court of Appeals of Maryland.

June 26, 2001.

Julia Doyle Bernhardt, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

C.J. Messerschmidt, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, Judge.

Darryl E. Wilson (Appellant), the father of four children by three mothers (Tina Holliday, Leslie Washington, and Antoria Dixon (Appellees)), was ordered by the Circuit Court for Dorchester County to pay child support for each child. On 29 April 1993, in response to petitions for contempt for non-payment of those support obligations, Appellant conceded that he had failed to pay pursuant to the support orders. Disposition, originally scheduled for 26 August 1993, was postponed until 17 February 1994. At that time, Appellant failed to appear and, as a result, the court issued a bench warrant for

his arrest. Six years later, on 29 February 2000, the bench warrant was able to be executed. Appellant was released upon posting of a $1000 corporate surety bond the same day.

On 30 March 2000, Appellant appeared at the disposition hearing without an attorney. The court postponed the hearing until 27 April 2000 so that he could obtain one, but ordered Appellant to post a cash-only bond in the amount of $9353, which represented at the time the total amount of his arrearages in the cases. Appellant was unable to post the cash-only bond. On 27 April 2000, the court sentenced Appellant to 18 months in prison, beginning on 1 December 2000, with a purge provision that he either pay the entire amount of the arrearages or a set portion of the arrearage in each case before that date, and that he make current support payments. Appellant appealed to the Court of Special Appeals on 1 May 2000.

On 16 October 2000, before the intermediate appellate court decided his appeals, Appellant filed a petition for *writ of certiorari* with this Court and a motion to stay the judgments of the Circuit Court. Appellees, represented by the State, consented to the entry of the stay, which we ordered contemporaneously with granting Appellant's petition for *certiorari* on 13 November 2000.[1]

The petition for *certiorari* presented the following questions:

1. Whether, under Maryland Rule 15–207(e)(4), where the contemnor lacks a present ability to pay, a circuit court may impose a deferred sentence of incarceration subject to a purging provision, whether that purging provision may include the payment of current support, and whether the court may provide for automatic execution of the sentence in the event that the purge amount is not paid.

2. Whether, under Maryland Rule 15–207(c)(2), a circuit court may, pending further proceedings on the contempt petition, incarcerate a civil contemnor who has failed to

---

1. *Wilson v. Holliday,* 361 Md. 433, 761 A.2d 932 (2000).

appear and set a bond which he does not have the ability to post.

## I.

This case arises from a 1993 finding that Appellant was in contempt of child support orders regarding four children he fathered with Appellees, Tina Holliday, Leslie Washington, and Antoria Dixon. The cases were consolidated by court order entered 31 May 1990.

### A. *Tina Holliday*

Having established on 8 March 1984 that Appellant had fathered Tina Holliday's son, the Circuit Court for Dorchester County ordered Appellant to pay $10 a week in child support, with the amount increasing to $25 upon Appellant's entry into the armed services. Because Appellant failed to meet his support obligations, many petitions to hold him in contempt for nonpayment of support were filed with the court over the years. The petition giving rise to the present case was filed on 10 September 1992. Appellant appeared in court on 29 April 1993 and admitted that he had failed to meet his support obligation; however, he failed to appear for a continued disposition hearing scheduled for 17 February 1994. A bench warrant was issued for Appellant and a $1000 blanket bond was set (in all four cases) on 25 February 1994. The warrant was not able to be executed until 29 February 2000.

### B. *Leslie Washington*

Appellant's paternity of Appellee Washington's two children was established on 23 September 1985. The Circuit Court for Dorchester County ordered Appellant to pay $10 a week in support for each child. Appellant failed both to meet this obligation and to attend his contempt hearing on 26 January 1993. As a result, the court issued a bench warrant for Appellant's arrest. On 23 April 1993, Appellant appeared in court and admitted to breaching the support orders. Rescinding the bench warrant, the court found Appellant to be $1516 in arrears on his child support payments. Although the court

postponed and rescheduled his disposition hearing, Appellant failed to appear. The court issued a bench warrant for Appellant's arrest on 25 February 1994. The warrant was not able to be executed until 29 February 2000.

### C. Antoria Dixon

Appellee Dixon filed a paternity complaint against Appellant on 4 March 1986 to establish the paternity of her one-month-old son. On 19 October 1990, Appellant's paternity of Appellee Dixon's child was established. Appellant agreed to pay $41.08 a week in child support, but ultimately failed to do so. On 10 September 1992, Appellee filed a petition to hold Appellant in contempt; Appellant failed to appear for the contempt petition hearing held on 26 January 1993. The court issued a bench warrant for his arrest. On 29 April 1993, Appellant admitted having violated the child support order and to owing Appellee Dixon $5336 in arrears. Although the court postponed and rescheduled his disposition hearing, Appellant failed to appear. The court issued a bench warrant for Appellant's arrest on 25 February 1994. The warrant was not able to be executed until 29 February 2000.

### D. Disposition Hearings

The disposition hearing on the contempt findings in all four cases was originally scheduled for 26 August 1993, but was postponed until 16 December 1993, at which time Appellant's request for legal representation prompted the court to postpone the hearing again until 27 January 1994. Because Appellant failed to appear for the January hearing, the court postponed the hearing until 17 February 1994. When Appellant failed to appear at that hearing as well, the court issued a bench warrant.

After submitting himself to custody on 29 February 2000,[2] Appellant appeared at a 30 March 2000 disposition hearing.

---

**2.** Appellant's attorney indicated that, sometime during 1994 or 1995, Appellant was incarcerated in Delaware for failure to pay child support and for sexual assault. He was not released until early 2000. Accord-

Appellant asserted that, until informed by the court that day, he had not known that the hearing was a sentencing hearing.[3] Because he appeared at the hearing without an attorney, the court postponed the sentencing hearing until 27 April 2000 so that Appellant could obtain counsel. The court, on 30 March 2000, also set a blanket cash bond in the amount of $9385, an amount equal to Appellant's current arrearages in the four cases, despite Appellant's assertions that he was unable to pay that amount and that he was concerned for his job should he be incarcerated as a result of that inability.

Unable to post the cash bond, Appellant was incarcerated until his 27 April 2000 hearing. As a result of his incarceration while awaiting sentencing, Appellant lost his job in Salisbury, Maryland. With Appellant unemployed and, according to counsel, likely to have difficulty in obtaining new employment in light of his criminal record, Appellant's attorney requested at the sentencing hearing that the court "fashion [Appellant's purge schedule] in a way that he could more reasonably make these payments so that we don't set up [Appellant] just for failure again, to come back just on December 1 and begin serving [an] extensive sentence here." Appellees' attorney hypothesized that Appellant would be able to meet the recommended payment schedule if he held two minimum-wage jobs.

The court ordered Appellant to serve 18 months in the Dorchester County Detention Center for each case, to run concurrently, unless he paid the following amounts by 1 December 2000: in Appellee Holliday's case, Appellant was

---

ing to a letter dated 6 April 2000 from Appellant's mother to the Circuit Court, however, Appellant apparently was incarcerated between May 1995 and November 1996, and between November 1997 and September 1999. (Letter from Joyce Pelson, Appellant's mother, to Hon. Donald F. Johnson, Judge, Circuit Court for Dorchester County (6 April 2000) (in record for all four cases)).

3. Appellant's caseworker confirmed that, in her letter to Appellant, she indicated that the 30 March 2000 hearing was scheduled to settle the contempt issues. She did not mention that it was, in fact, a sentencing hearing regarding his 29 April 1993 contempt.

ordered to pay a purge amount of $420, plus $10 a week in current payments and $20 a week in arrears; in Appellee Dixon's case, Appellant was ordered to pay a purge amount of $1650, plus $41.08 per week in current support payments; in Appellee Washington's one child's case, Appellant was ordered to pay a purge amount of $420, plus $10 a week in current payments and $20 a week in arrears; and, in Appellee Washington's other child's case, Appellant was ordered to pay a $510 purge amount, plus $10 a month in arrears and $52 a month in current payments. When questioned further about the amount Appellant would be required to pay in arrears, the court answered that Appellant was to pay the amount of the 29 April 1993 arrearages, as well as *"any future contempts."* [Emphasis added].

## II.

During oral argument before us, counsel for Appellees initially conceded the correctness of Appellant's arguments, reserving only for defense that Appellant's defense counsel in the Circuit Court had agreed to the purge amount.[4] Specifically then, the parties agree that the Circuit Court erred when it fashioned a self-executing purging scheme that provided for full payment of arrearages without evidence of Appellant's present ability to pay, as well as when it ordered Appellant to post a $9353 cash-only bond. They also agree that Appellant should not have been incarcerated without a hearing as to any future non-payment of support, i.e., conduct which had not yet occurred and thus was not yet contemptuous. Appellees' concessions are well-founded.

### A. *Maryland Rule 15–207(e)*

Appellant made three arguments under Maryland Rule 15–207(e). First, he asserted that the Circuit Court erred when, while imposing incarceration or substantial purge provisions, it

---

4. Ultimately, in view of this Court's opinion in *Rawlings v. Rawlings,* 362 Md. 535, 766 A.2d 98 (2001), Appellees' counsel conceded error on this point as well. *See* note 6, *infra.*

made no finding that Appellant had the present ability to pay the monetary purge of the contempt. Second, he argued that the judgments in this case erroneously required, as a purging provision for past contempt, the payment of future child-support payments when due. Third, Appellant contended that the Circuit Court erred because its judgments made no provision for a further hearing to determine whether Appellant actually had violated the Rule 15–207(e)(4) order and whether he had the ability to purge the contempt before incarceration. We agree that the Circuit Court erred in its judgments.

In *Lynch v. Lynch,* 342 Md. 509, 677 A.2d 584 (1996), we concluded that, if an obligor could prove that he or she did not have the present ability to pay the amount of child support owed, then the court could not hold him or her in contempt. *Lynch,* 342 Md. at 521–22, 677 A.2d at 590. We explained:

Where the order is one prescribing or prohibiting a specified cause of conduct, the required defense showing is that the defendant is unable to conform his or her conduct in compliance with the court order. Where the order calls for the payment of money, the defendant is entitled to the "opportunity to show that he [or she] had neither the estate nor the ability to pay his [or her] obligation." In that situation, "[m]orever, the *issue is not the ability to pay at the time the payments were originally ordered; instead, the issue is his present ability to pay." Only if he or she fails to show such inability is a finding of contempt and subsequent imprisonment permitted.*

*Id.* (emphasis added) (citations omitted).

Abrogating this holding in *Lynch,* the Court enacted Maryland Rule 15–207(e) (amended 10 December 1996, effective 1 January 1997; 20 January 1999, effective 1 July 1999), which provides, in pertinent part:

(e) **Constructive civil contempt—Support enforcement action.** (1) Applicability. This section applies to proceedings for constructive civil contempt based on an alleged failure to pay spousal or child support, including an award

of emergency family maintenance under Code, Family Law Article, Title 4, Subtitle 5.

(2) Petitioner's burden of proof. Subject to subsection (3) of this section, the court may make a finding of contempt if the petitioner proves by clear and convincing evidence that the alleged contemnor has not paid the amount owed, accounting from the effective date of the support order through the date of the contempt hearing.

(3) When a finding of contempt may not be made. The court may not make a finding of contempt if the alleged contemnor proves by a preponderance of the evidence that (A) from the date of the support order through the date of the contempt hearing the alleged contemnor (i) never had the ability to pay more than the amount actually paid and (ii) made reasonable efforts to become or remain employed or otherwise lawfully obtain the funds necessary to make payment, or (B) enforcement by contempt is barred by limitations as to each unpaid spousal or child support payment for which the alleged contemnor does not make the proof set forth in subsection (3)(A) of this section.

(4) Order. Upon a finding of constructive civil contempt for failure to pay spousal or child support, the court shall issue a written order that specifies that (A) the amount of the arrearage for which enforcement by contempt is not barred by limitations, (B) any sanction imposed for the contempt, and (C) how the contempt may be purged. If the contemnor does not have the present ability to purge the contempt, the order may include directions that the contemnor make specified payment on the arrearage at future times and perform specified acts to enable the contemnor to comply with the direction to make payments.

█ Recently, in *Rawlings v. Rawlings*, 362 Md. 535, 766 A.2d 98 (2001), we discussed the "legislative intent" of Rule 15–207(e) and its effects on the *Lynch* holding. *Rawlings*, 362 Md. at 544–50, 766 A.2d at 103–07. We noted that

Rule 15–207(e) resolved *Lynch's* concern regarding the inability to purge if contempt is based on the past ability to

pay or if the contemnor is determined to be unable presently to satisfy the purge amount. Rule 15–207(e)(4) requires that if is determined that the contemnor does not have the present ability to *purge,* then "the [contempt] order may include directions that the contemnor make specified payments on the arrearage at future times and perform specified acts to enable the contemnor to comply with the direction to make payments." Rule 15–207(e)(4). As the committee note explains,[5] and as noted *supra,* "[i]f the

---

**5.** In *Rawlings v. Rawlings,* 362 Md. 535, 766 A.2d 98 (2001), we referred to a letter from the then Chair of this Court's Standing Committee on Rules of Practice and Procedure, which discussed the then proposed Rule 15–207(e)(4) and its impact on *Lynch.*

[T]here is widespread concern that the *Lynch* decision has made the enforcement of child and spousal support orders very difficult. The Committee was advised that, in some areas of the State, enforcement through civil contempt proceedings has effectively been eliminated.

The support enforcement personnel were aware, long before *Lynch,* that it was impermissible for a court, in a civil contempt action to imprison the obligor for nonpayment of court-ordered support if the contemnor was not then able to comply with the purge provision. The practice, however, in such a case, was for the court to make a finding of contempt based on evidence that the obligor had the ability to make payments during the period at issue, set a purge amount, and direct the obligor either to make specific payments on the arrearage in the future or to take other specific steps, such as searching for employment, to enable him or her to make those payments. The witness indicated that, in most instances, that approach was successful in producing payments.

The problem now, according to the witnesses, is that *Lynch* prohibits a finding of contempt unless the obligee can prove an ability to purge on the day of the hearing, and it is extremely difficult, if not impossible, to have such immediately up-to-date information. The obligee may have evidence of employment or other ability to pay at the time the petition is filed but may be unable to prove that ability on the day of the hearing, which may be two weeks later. Absent that ability, no finding of contempt can be made, and absent a finding of contempt, no purge provision can be set. The whole coercive mechanism fails.

The Committee was persuaded that the witnesses' interpretation of *Lynch* was correct and that the rule should be changed to permit a finding of contempt based on evidence of an ability to pay during the period proceeding the hearing. This change would not, of course, allow the court to imprison an obligor in the absence of evidence that he or she is capable of meeting the purge provision; its function is simply to allow the finding of contempt, coupled with a purge and, when appropriate, directions that the obligor make specific payments

contemnor fails, without just cause, to comply with any provisions of the order, [then] a criminal contempt proceeding may be brought based on a violation of the proceeding." Rule 15–207(e)(4). Rule 15–207(e) thus complies with the notions in *Lynch* that one must first have the opportunity to demonstrate an inability to pay his obligation and, if imprisonment is ordered, the ability to purge, thus retaining the remedial nature of civil contempt-civil contempt is to force compliance and not to punish. Moreover, the goal of civil contempt of forcing compliance is met when the contemnor is provided with directions as to how to comply and only upon failure to do so may a criminal contempt proceeding be brought. Thus, Rule 15–207(e) provides an extra opportunity for a contemnor to comply with the order before being subject to *criminal* contempt proceedings. Nonetheless, a defendant's present inability to pay, other than as a prerequisite consideration to setting the purge amount, was abolished effectively as a defense to a contempt finding by the adoption of Rule 15–207(e).

*Rawlings*, 362 Md. at 551–53, 766 A.2d at 107–08 (internal citations omitted). Thus, while Rule 15–207(e) does not eliminate the option of terminating a civil proceeding and initiating a criminal contempt proceeding for a defendant who refuses intentionally to pay his or her child or spousal support amount, the Rule does not provide the courts with the sanction of incarceration where the defendant does not have the present ability to purge.

In *Jones v. State*, 351 Md. 264, 718 A.2d 222 (1998), the Circuit Court for Baltimore County, upon finding Jones in civil

---

in the future or take other specific actions to enable him or her to make those payments. This is reflected in the proposed changes to Rule 15–207.

*Rawlings*, 362 Md. at 550, 766 A.2d at 106 (internal citations omitted) (quoting Letter from Hon. Alan M. Wilner, Chairman, Standing Committee on Rules of Practice and Procedure, to Hon. Robert M. Bell, C.J., Hon. John C. Eldridge, Hon. Lawrence F. Rodowsky, Hon. Howard S. Chasanow, Hon. Robert L. Karwacki, and Hon. Irma S. Raker (Oct. 31, 1996)) (on file with Standing Committee on Rules of Practice and Procedure).

contempt for failure to comply with a child support order, imposed a deferred two-year prison sentence on the condition that Jones make the previously ordered payments. *Id.*, 351 Md. at 271, 718 A.2d at 226. The court instructed that, if Jones missed a single payment, "the full balance at that time shall be due and he shall report to the [Baltimore County] Department of Corrections to serve his sentence." *Id.*, 351 Md. at 279, 718 A.2d at 230. Overruling the Circuit Court's judgment, we determined that the provision was invalid because it required the contemnor to "report to serve the prison sentence without any determination of his present ability to purge the contempt." *Id.* We explained that, although Rule 15–207(e) resolved the concerns regarding the *Lynch* holding, it did not mitigate the pre-requisites of when one can be incarcerated after being adjudicated in civil contempt:

> [u]nder Rule 15–207, the finding of civil contempt does not pose an immediate threat of incarceration to the contemnor. Maryland law has long required a distinct regimen of substantive and procedural safeguards for persons found to be in civil contempt of a support enforcement order. "Only if [the contemnor] fails to show [a *present*] inability [to pay] is ... subsequent imprisonment permitted."

*Jones*, 351 Md. at 275–76, 718 A.2d at 228 (alterations in original) (emphasis added) (internal quotation marks omitted) (quoting *Lynch*, 342 Md. at 521–22, 677 A.2d at 590). Elucidating this "regimen," we noted that

> [t]he procedural component to this restrictive requirement is that any party judged to be a civil contemnor must be afforded the opportunity to show a *present* inability to purge the [*past*] contempt; "Where the order calls for the payment of money, the defendant is entitled to the 'opportunity to show that he [or she] had neither the estate nor the ability to pay his [or her] obligation.' "

*Jones*, 351 Md. at 276, 718 A.2d at 228 (alterations in original) (emphasis added) (internal quotations omitted) (quoting *Lynch*, 342 Md. at 521, 677 A.2d at 590) (quoting *Johnson v. Johnson*, 241 Md. 416, 420, 216 A.2d 914, 917 (1966)).

■■ In other words, if a civil contemnor does not have the present ability to purge, a court cannot incarcerate him or her in the constructive civil contempt proceeding. In the present case, Appellant's sentence instructed him to report to prison on 1 December 2000 if he was not able to pay the requisite purge amounts (i.e., the full arrearages) and make current payments. The court erred in issuing such an order, for the court cannot order a self-executing prison sentence in this situation, i.e., one that does not first require a hearing to determine whether Appellant possessed the present ability to pay the purge amounts and whether he failed to make the current payments due between the 27 April 2000 order date and the 1 December 2000 compliance date.

In the current case, Appellant, unable to post the cash bond, was incarcerated for 28 days. As a result of his incarceration while awaiting sentencing, Appellant lost his $6 per hour job. Unsure of Appellant's ability to obtain employment in light of Appellant's criminal record, Appellant's attorney asserted during the 27 April 2000 sentencing hearing that:

> I believe that if The Court would consider....The Court has already heard that [Appellant] is required to pay [*sic* ] he has two other children in Delaware which he pays $54 a week for those children.

* * *

> I'm just concerned about the amounts in which he'd have to pay in terms of the fact that he—with his criminal record that The Court has heard that he's been incarcerated basically since 1995, we've now heard, for sex offenses, that his opportunity of getting a high-paying job is not as likely as someone else that may be able to come up with these amounts.

* * *

> But I would ask The Court to, perhaps, fashion it in a way that he could more reasonably make these payment so that we don't set up [Appellant] just for failure again, to come

back just on December 1 and begin serving extensive sentence here.

In response, Appellees' attorney noted that:

[We] put a great deal of thought to fashion our recommendation for you today.... [W]e even sat down and figured out what [Appellant] would be making on a minimum-wage job, and what percentage of taxes would most likely be taken out, and how much he would be left with.

And we came to the conclusion ... if he's only able to maintain minimum-wage employment, he would be in a position of having to obtain a second job. A lot of people in this world [*sic* ] do work two jobs and I don't think it's unreasonable to expect him to obtain a second job to be able to make these payments....

After hearing the parties' arguments, the Circuit Court issued the following sentence:

[COURT]: [In Appellee Holliday's case, t]he Court sentences [Appellant] to 18 months in the Dorchester County Detention Center beginning December 1, 2000. He may purge himself of contempt by paying $420 by December 1, 2000, and by making his regular $10 support payments and $20 on the arrears per week. He may also purge himself of contempt at any time by paying the total amount.

And, in [one of Appellee Washington's cases], the Court sentences him to 18 months beginning December 1, 2000. That is to be concurrent to the 18 month sentence in [Appellee Holliday's case]. Now, in [this case], he may purge himself of contempt by paying $420 by December 1, 2000, and by paying $10 support a week plus $20 a week on the arrearage. In [Appellee Dixon's case], The Court sentences [Appellant] to 18 months beginning December 1, 2000. That would be concurrent ... to the sentence imposed in [the above mentioned cases]. He may purge himself of contempt in [Appellee Dixon's case] by paying the full amount of the arrearage at any time or by paying

$1650 by December 1, 2000, and by making regular child support payments of $41.08 a week.

In [Appellee Washington's second case], The Court sentences him to 18 months to the Dorchester Detention Center beginning December 1, 2000. He may purge himself of contempt [in this case] by paying $510 by December 1, 2000, plus $52 a month in support and $10 a month toward arrearage. And he is to be given credit for 28 days served [while awaiting this hearing].

\* \* \*

[APPELLEES' ATTORNEY]: What—in terms of—we're talking about sentencing him to something as a result of the April-29-'93 hearing and we're talking about the arrearage found on that day?

[COURT]: Yes, ma'am. *And any future contempts.* [Emphasis added].

■■■ On this record, the Circuit Court erred in imposing a deferred sentence of incarceration subject to a purging provision, which included the payment of current support, when there was no evidence presented to show that Appellant had the present ability to pay that amount, and, where a separate hearing was not held to determine whether Appellant was in contempt of the child support orders between 27 April and 1 December 2000. Once a finding of constructive civil contempt was made in the present case, Rule 15–207(e)(4) required the Circuit Court to issue a written order that specified "(A) the amount of the arrearage for which enforcement by contempt is not barred by limitations, (B) any sanction imposed for that contempt, and (C) how the contempt may be purged." Maryland Rule 15–207(e)(4). Here, where Appellant did not have the *present* ability to purge the *past* contempt, "the order may include directions that the contemnor make specific payments on the arrearage at *future* times and perform specified acts to enable the contemnor to comply with the direction to make payments." *Id.* The rule does not, however, provide that the order may include directions to make future child support

payments as a way in which to purge past contempt. In this respect, the Circuit Court erred as well.

No evidence was advanced that Appellant had the present ability to pay the purge amount. Even by Appellees' attorney's reckoning, Appellant could not pay the purge amount unless he held not one, but two jobs. While this argument may be accurate about Appellant's potential *future* employment, it did not respond to the fact that Appellant was, on the date of the hearing, *presently* unemployed and *presently* unable to pay the purge amounts. It appears that the Circuit Court's frustration (and reflecting Appellees' as well, no doubt) with repeated case postponements occasioned by Appellant's conduct and/or inertia and his overall noncompliance with the support orders led it to speculate what purge amount Appellant could pay and to disregard evidence of what he could not. In *Rawlings,* although decided after the occurrence of the operative events in the present case, we cautioned against such conduct, stating:

[I]t may be frustrating to judges and masters to deal with people who appear to be deliberately ignoring their child-support obligations, by spending available funds for other purposes, by voluntary impoverishment, by refusing to obtain steady employment, or by other technique—people who return time and again with excuses that the judge or master finds incredible or inadequate and who thus seem to flaunt their defiance of properly entered court orders. Nonetheless, because a person's liberty is at stake and because it is a judicial proceeding, both the form and substance of due process and proper judicial procedure must be observed. Shortcuts that trample on these requisites and conclusions that are based on hunch rather than on evidence are not allowed.

*Rawlings,* 362 Md. at 571–72, 766 A.2d at 118 (quoting *Thrower v. State ex. rel. Bureau of Support Enforcement,* 358 Md. 146, 161, 747 A.2d 634, 642 (2000)). In *Rawlings,* upon hearing that the court intended to set the purge amount for the sum of the arrears, the contemnor's attorney first protested that his client did not have the ability to pay any purge

amount, then proposed that the court set a purge of $2500, and later agreed for him to pay $3,367.90, or 10 percent of the total arrears. *Id.*, 362 Md. at 568–70, 766 A.2d at 116–17. We determined that "[i]n the absence of evidence bearing on present ability to pay any purge sum, however, it appears that speculative negotiations took place between the court and the parties' attorneys on this point." *Id.*, 362 Md. at 570, 766 A.2d at 117. We concluded that such negotiations by the contemnor's attorney did not constitute an admission of fact that the contemnor had the present ability to pay either purge amount proposed.[6] *Id.*

Under the circumstances of the present case, it was not proven that Appellant had either the estate or the present ability to pay the purge amount of past and future contempts at the set amount. Moreover, Appellant's attorney's discussions with the court, specifically where the record does not reflect that he consulted with Appellant, cannot be construed as admissions of fact that Appellant had the ability to pay the purge by 1 December 2000. Rather, they were merely negotiations with the court and opposing counsel to obtain the lowest

---

**6.** In *Rawlings,* we noted that

> it is well settled under Maryland law that
>
> > there is a *prima facie* presumption that an attorney has authority to bind his client by his actions relating to the conduct of litigation. This is particularly true of stipulations or admissions made in the course of trial.

*Rawlings,* 362 Md. at 570–71, n. 30, 766 A.2d at 118, n. 30 (internal citations omitted). In *Rawlings,* we concluded that the contemnor's attorney did not make a binding admission that his client had the present ability to pay when he accepted the court's purge amount, in light of earlier, contradictory comments he made about his client's present ability to pay. *Id.,* 362 Md. at 570–71, n. 30, 766 A.2d at 118, n. 30. We determined that

> The record does not reflect that Petitioner's counsel consulted with his client before agreeing to the purge amount. As Petitioner's present ability to pay is a matter of fact, doubt is cast on what Petitioner's attorney may have been conceding. The law requires more before the court establishes a purge amount, the non-payment of which may lead to the incarceration of Petitioner in a civil contempt proceeding.

*Id.* Similarly, the evidence on the present record does not establish Petitioner's present ability to pay as a matter of fact.

purge amount possible. *See Rawlings,* 362 Md. at 570, 766 A.2d at 117. Although Appellant may have had the present ability to pay the purge, there was no proof that he did; rather, there was Appellant's testimony that he did not. On remand, if the evidence supports it, the Circuit Court, pursuant to Rule 15–207(e)(4), may order "directions that ... [Appellant] make specified payments on the arrearage at a future times and perform specified acts to enable ... [Petitioner] to comply with the direction to make payments."

### B. Maryland Rule 15–207(c)(2)

 The second assertion which Appellant poses is that, in accordance with Maryland Rule 15–207(c)(2), a circuit court may not, pending further proceedings on the contempt petition, incarcerate a civil contemnor who has failed to appear and to set bond which the contemnor does not have the present ability to post. We agree. Maryland Rule 15–207(c)(2) provides:

> (2) Failure of alleged contemnor to appear. If the alleged contemnor fails to appear personally at the time and place set by the court, the court may enter an order directing a sheriff or other peace officer to take custody of and bring the alleged contemnor before the court or judge designated in the order. If the alleged contemnor in a civil contempt proceeding fails to appear in person or by counsel at the time and place set by the court, the court may proceed ex parte.

 When interpreting and reconciling the Court's rules of procedure, we employ the same guidelines used for interpreting statutes. *O'Donnell v. McGann,* 310 Md. 342, 350, 529 A.2d 372, 376 (1987); *In re Leslie M.,* 305 Md. 477, 481, 505 A.2d 504, 507 (1986); *Pappas v. Pappas,* 287 Md. 455, 465, 413 A.2d 549, 553 (1980). Related court rules, like related statutes, are construed to harmonize with each other to produce reasonable results, if possible. *McGann,* 310 Md. at 350, 529 A.2d at 376; *Equitable Life Assurance v. Jalowsky,* 306 Md. 257, 263, 508 A.2d 137, 140 (1986); *Leslie M.,* 305 Md. at 481, 505 A.2d at 507.

Maryland Rule 15–207(c)(2) is clear and unambiguous, requiring no construction. It provides two, succinct alternatives for the court to select from should a contemnor fail to appear in a civil contempt proceeding: the court may direct that a contemnor be arrested and brought before the court for the scheduled hearing, or the court may hold the hearing in his or her absence. Affording the rule its plain meaning, it clearly does not speak to whether a court may order that the contemnor be arrested and detained while awaiting a subsequent hearing or set an unreasonable bond amount to secure via incarceration the contemnor's attendance. Additionally, the language does not provide that a court may direct a cash bond in the amount of the accumulated arrearages where that amount is in excess of a contemnor's ability to post such an amount.

The following exchange occurred during the 30 March 2000 hearing with regard to Appellant's cash bond, which the court set at an amount equal to the total amount of Appellant's arrearages.

[CASEWORKER]: I understood when I came on board with the Bureau of Support Enforcement this was a very difficult case, and it was very difficult to find [Appellant] and keep him working when I did find him, and that's just a little bit of background history.

[APPELLEES' ATTORNEY]: At this point—I mean, it's my understanding that in—

[COURT]: Well, if [Appellant] wishes an attorney and he was told something else that made him believe that this was some other purpose then I'll continue his case and reschedule it. However, I'm going to set bond in an amount that's equal to the amount of the arrearages in each case and that total will be $9000–$9353 and that will be a cash bond.

\* \* \*

[APPELLANT]: Excuse me, Your Honor. That's the bail that I'm out on now, is for these cases.

[COURT]: Well, I've just increased it to a cash bond. It will be a blanket bond for all four cases and—

[APPELLANT]: What about my—

[COURT]:—next date is April 27; is that—

[CLERK]: Yes, Your Honor.

[COURT]: Okay. And the next-you should be here on April 27th at 8:30 prepared for sentencing. In the meantime, I've already told you about your rights to an attorney; that's on the record. And if you want one you should get one between now and April 27th.

[APPELLEES' ATTORNEY]: Thank you, Your Honor.

[APPELLANT]: What about my employment?

[COURT]: I don't have anything to do with your employment. It's up to your employer.

[APPELLANT]: I'm saying, will I be able to go to work?

[COURT]: If you post the bond, yes.

[APPELLANT]: You can't make it secured?

[COURT]: I'm sorry?

[APPELLANT]: You can't make it secured because I can't come up with $9000 cash? I mean, it's not like I'm going anywhere. I'm already on probation.

[COURT]: I'm going to have to leave it as is. Seven years is a long time not to appear.....

▮▮ Under Maryland Rule 1–402(d), "[a]t any time for good cause shown, the court may require an increase or decrease in the face amount of the bond." Once the court secured Appellant's attendance, however, the court was required to proceed in a manner which maintained Appellant's right to due process. The court erred when it attempted to palliate Appellant's incarceration, subject to a purge amount that he asserted he could not pay (an assertion to which Appellees' failed to mount a significant challenge to the contrary), by claiming he was a flight risk based upon his prior non-appearances. We reiterate that "because a person's liberty is at stake and because it is a judicial proceeding, both the form and substance of due process and proper judicial proce-

dure must be observed. Shortcuts that trample on these requisites and conclusions that are based on hunch rather than on evidence are not allowed." *Rawlings,* 362 Md. at 571–72, 766 A.2d at 118 (quoting *Thrower,* 358 Md. at 161, 747 A.2d at 642). While we understand the court's frustration with Appellant's prior conduct, we conclude that the court in this case failed to adhere to the guidelines of due process when, instead of setting a bond that was reasonable under the circumstances, it set a bond in an amount that, in effect, constituted no bond at all.

**JUDGMENT OF THE CIRCUIT COURT FOR DORCHESTER COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE STATE OF MARYLAND.**