21 A.3d 123

**Joanie S. BRADFORD**

v.

**STATE of Maryland.**

**No. 206, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

June 1, 2011.

**176**

Marc A. DeSimone, Jr. (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

Jonathan I. Pomerance (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: ZARNOCH, KEHOE, CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

KEHOE, J.

In her appeal from an order of the Circuit Court for Washington County sentencing her to incarceration for civil contempt for failure to pay child support, Joanie Bradford takes aim at the "delayed sentencing agreement" ("DSA") executed by her and the Child Support Unit of the Washington County Department of Social Services (the "Department") at an earlier stage in the proceeding.[1]

---

1. The Child Support Enforcement Administration describes DSAs as agreements that "provide[] child support enforcement workers the right to sentence for incarceration non-compliant clients unless the client meets certain prescribed payment/obligation agreements. The sentence is certified by a judge/master and becomes legally binding should the client fail to meet prescribed requirements." Department of Human Resources, Child Support Enforcement Administration, AN ASSESSMENT OF THE RELATIVE IMPORTANCE OF RESOURCE ALLOCATION ACROSS JURISDICTIONS IN DETERMINING CHILD SUPPORT OUTCOMES (2007) (the "Assessment") p. 27. There is no statutory or regulatory authority for DSAs.

DSAs are used only in Washington County. Perhaps not entirely coincidentally, Washington County "has the highest [child] support collection ... rate[] in the state." *Id.* (citing DSAs as one of the "unique enforcement mechanisms" contributing to Washington County's success.) The Assessment may be viewed in its entirety at http://dlslibrary.state.md.us/publications/JCR/2007/2007_141.pdf.

As we will describe in greater detail, under the terms of the DSA, Ms. Bradford admitted that she was in contempt of court and agreed to serve a sixty day jail sentence to commence at a future date. The agreement provided for a monetary purge which, if timely paid before the sentence commenced, would have discharged the contempt. Ms. Bradford was not represented by counsel at the time she signed the agreement. The Department then submitted the DSA to the circuit court, which, without holding a hearing, entered an order holding her in contempt and imposing the sentence.

Appellant raises four issues which we have reordered, consolidated, and reworded as follows:

I. Did the circuit court err in entering the order holding appellant in contempt and imposing a jail sentence without first determining whether appellant's waiver of counsel was knowing and intelligent?

II. Was the parties' delayed sentencing agreement unenforceable as a matter of law?

III. Did the lower court err in sentencing Ms. Bradford to thirty days incarceration, subject to a $250 purge, absent a finding, or evidence to support a finding, that she had the present ability to pay that purge?

We conclude that the appeal is moot but that it is appropriate for us to consider appellant's arguments nonetheless. The circuit court erred in holding appellant in contempt and imposing a sentence of incarceration without first ascertaining that appellant had validly waived her right to counsel. In addition, the delayed sentencing agreement was unenforceable because it called for the imposition of an illegal sentence.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2006, Ms. Bradford was ordered to pay child support in the amount of $223.00 per month for two of her children, D.W. and C.W. Ms. Bradford was unable or unwilling to pay the required child support and was the subject of repeated enforcement proceedings. On June 2,

2009, the Department filed the petition for contempt that eventually gave rise to this appeal.

The petition alleged that Ms. Bradford was $2,870.59 in arrears as of May 26, 2009 and, among other relief, requested that the court "find Defendant in contempt[;] . . . order the Defendant incarcerated for her willful contempt[;] . . . [and] impose sanctions as [sic] the Defendant to satisfy said obligation."

The petition was served on Ms. Bradford, together with a writ of summons requiring her to appear at a "conciliation conference" with the Department. The summons stated that, if the case was not resolved "by entry of a Consent Order at the CONCILIATION CONFERENCE," she was required to appear before the circuit court for a hearing on the Department's petition. The summons also stated in pertinent part:

> You are entitled to be represented by an attorney at both the Conciliation Conference and before the Court. No attorney will be appointed to represent you. Failure to arrange for an attorney may be viewed as your waiver of the right to counsel. If you are charged as being in Contempt of Court, you may be incarcerated, fined or both if it is determined at a hearing that you are indeed in Contempt. The Office of the Public Defender can provide you representation only in cases where you are alleged to be in Contempt of Court and you are financially unable to afford the services of a private attorney. If you wish to employ the services of the public defender. . . .

Ms. Bradford had her conciliation conference with the Department on July 24, 2009. During the conference, and without the assistance of counsel, she signed the DSA at issue in this appeal. This document consists of a preprinted form with 21 numbered paragraphs containing blank spaces that were filled in either by Ms. Bradford or a representative of the Department. At the end of each paragraph was a space for Ms. Bradford to write either "yes" or "no" in order to indicate her assent to statements contained in the paragraph.

Under the terms of the DSA, Ms. Bradford: (i) admitted that she was in contempt of court for failure to pay child support; (ii) waived her right for a hearing before a judge or master; (iii) waived her right to "call and confront witnesses, raise defenses [she] may have or object to defects in the State's case"; (iii) acknowledged that she was entitled to be represented by an attorney and waived that right; and (iv) waived her right of appeal except to the "issues of jurisdiction and whether this agreement was voluntary."

In addition, the DSA provided:

15. Other than the conditions listed in paragraph 20 below has anyone made any promises or inducement for you to admit you are in Contempt for failing to pay child support? __No__

16. Do you understand that if you fail to comply with each and every condition of the purge provisions in paragraph 20, the recommended sentence will be imposed? __Yes__

17. Do you understand that in order to fully comply with the Purge Provisions in paragraph 20 below, you must make regular payments effective 8/1/2009? __Yes__

18. Do you agree that the arrears under the prior order now stands at $3, 316.59 as of July 24, 2009? __Yes__

19. Do you understand that the Court will impose a sentence of 60 days/~~months~~ in the Washington County Detention Center with said sentence to be imposed on October 23, 2009 if you have not complied with the Purge Provisions below? __Yes__

20. Do you understand that you may avoid incarceration on that date by complying fully with the following Purge Provisions?

a) Pay current support each ~~week~~/month of $223.00 effective 8/1/09.

b) Pay an additional amount to reduce the arrears in this case of $55.74 per ~~week~~/month.

c) Pay a lump sum of $__N/A__ on or before your sentencing dates outlined in paragraph 19 above in addition to any other payment required by this Purge?

d) Other: _____

Do you understand? Yes
/s/ JB
Initials

21. Do you understand that pursuant to the case of *Arrington v. Dept. of Human Resources*, 402 Md. 79 [935 A.2d 432] (2008[2007]) you may have the right to assert at sentencing that you do not have the present ability to pay at that time. By entering into this agreement you are waiving that right and are asserting that you will have the present ability to pay on the date of sentencing.

Do you understand? Yes
/s/ JB
Initials

I further certify that I have the present ability to pay the purge provisions recited herein.

7/24/09 /s/ Joanie Bradford
DATE DEFENDANT

(Underlining and strikeouts in original.)

On July 27, 2009, the circuit court entered an order that stated in pertinent part:

Upon consideration of the Delayed Sentencing Agreement entered into by the Defendant Joanie Bradford, it is this 27th day of July, 2009 hereby:

Ordered, that the Defendant Joanie Bradford be and hereby is adjudicated in willful contempt of this Court's Order of 9/26/06 by failing to pay support in accordance with its terms, and it is further

Ordered, that the Defendant is hereby sentenced to 60 days in the Washington County Detention Center, imposition of said sentence is delayed to Friday, October 23, 2009 at 8:30 AM. The defendant is hereby ordered to appear on that date and time and it is further:

Ordered, that the Defendant may purge [her]self of [her] contempt and thereby avoid incarceration on that date by [satisfying the purge provisions contained in Paragraph 20 of the DSA].

The docket entries in this case state that Ms. Bradford was "found in contempt" on the date the circuit court signed the order. The docket entries do not indicate that Ms. Bradford was present or that the court held a hearing.

Ms. Bradford did not satisfy the purge provisions set forth in the DSA by the appointed date of October 23, 2009. On that day, she appeared without counsel before the circuit court. The court advised her of her right to counsel, which Ms. Bradford waived. She was sentenced to 60 days incarceration in the Washington County Detention Center, all of which was suspended. In addition, she was ordered to continue to pay $223 per month and her arrearage was determined to be $3,931.21. The court ordered that Ms. Bradford pay an additional $55.74 per month to reduce the amount of the arrearage.

Over the ensuing months, Ms. Bradford's performance of her obligations to pay child support was sporadic and at no time did she make the full payments called for in either the DSA or the court order of October 23, 2009. For reasons not relevant to the issues before us, the contempt proceeding against her was continued on several occasions.

Finally, on March 12, 2010, the circuit court conducted a hearing which led to the entry of the order giving rise to this appeal. By this time, Ms. Bradford was represented by counsel. At the hearing, the following ensued:

[THE DEPARTMENT]: Next case, Your Honor, is State vs. Joanie Bradford. Civil 25059. Here for sentencing.

THE COURT: Yes, Mr. Reed [Ms. Bradford's counsel].

[DEFENSE COUNSEL]: Your Honor, this is Ms. Bradford. I think she's already previously been found in contempt.

[THE DEPARTMENT]: That's correct. We are here for disposition .... she's here for sentencing on 60 days. Suggest that.

\* \* \*

THE COURT: Okay. Just a second. All right, we're here on a DSA, right?

[THE DEPARTMENT]: That's right. Sentencing.

THE COURT: Sixty day sentence entered into on July 27th, 2009, and the amounts speak for themselves. What are the amounts now before I go through the litany?

DSS WORKER: The arrears are $4307.91.... The dunning is $656.40.

THE COURT: Six fifty six forty. And there have been any payments since July 27th, 2009?

DSS WORKER: Yes, there have. The first payment was received in October for $9.23. In November, we received $18.46. In December, we received $113.94. January 2010, we received $125.32. In February, we received $73.56. And today she paid $40.00.

THE COURT: All right. Let the record reflect that the Delayed Sentencing Agreement ... [provided that] if she was out of compliance, a sixty day sentence would be executed on October 23rd, 2009. We have an Order of Court on October 23rd, 2009, ... that the sentence of sixty days was delayed to this date, and it is suspended, and that, basically, the Defendant shall pay child support as previously ordered, and the arrears were established and earnings withholding orders.... And so she's staring at sixty days. Okay.

First, looking to the DSA, the circuit court determined that Ms. Bradford had consented to a sentence of sixty days incarceration subject to a $656.40 purge. During the hearing, Ms. Bradford was examined by her attorney, counsel for the Department and the court regarding her execution of the DSA. This testimony indicated that appellant had not completed tenth grade; could read and write "a little"; and had signed DSAs on two prior occasions. On each of these occasions, appellant had been represented by counsel; however, she testified that she had not discussed the contents of the DSAs with counsel before signing them. None of the questions propounded to her by either counsel or the court touched

upon why she was not represented by counsel at the concilia-
tion conference at which the DSA at issue in this appeal was
signed.

Ms. Bradford also testified that her previous child support
payments had been made through a wage lien but that now,
despite efforts to find employment, she was not currently
working. She presented the court with what purported to be
a log showing her efforts to find employment. Ms. Bradford
stated that she was having trouble making ends meet and that
she was trying to raise two children who currently lived with
her. She testified that she had no money on her person or in
any bank account in her name on that day, that she had
nothing she could sell and that no one was holding any money
or substantial asset of hers which she could use to pay her
child support obligations.

In closing, the Department argued that:

[Ms. Bradford] signed the agreement knowingly and stat-
ing, as part of the agreement, that she had the present
ability to pay at that time. Now we're all going to play the
*Arrington*[2] card here and say, well, she doesn't have the
present ability to pay at this time. But she is, evidently,
making money, and she's making nominal payments. She's
choosing that she gives forty dollars as opposed to what is
required under the terms and conditions of the agreement.
Of the one thousand three hundred ninety three dollars and
seventy cents due and owing under [the DSA] . . ., she's
made seven hundred thirty seven dollars and thirty cents,
leaving her compliance amount at six hundred fifty six
dollars and forty cents. I think under the terms and
conditions, she's shown an ability to continue to earn and
make those payments. She's allocated them in that fashion.
And she's chosen to support the children she has as opposed
to this obligation. I think she has the ability to pay.

**2.** A reference to *Arrington v. Dept. of Human Res.*, 402 Md. 79, 101–04,
935 A.2d 432 (2007).

Counsel for Ms. Bradford asserted that, under *Arrington*, the court could not infer her ability to pay and the court could not order a purge that she could not pay. He continued:

And I think the language in *Arrington* is clear. It's unambiguous .... [i]t's not proper in a civil proceeding to incarcerate somebody when they don't have the present ability as they sit there in court to meet the purge. It's just not. And whether or not, maybe it is a red herring to talk about whether she signed these agreements in the past or not. I think *Arrington*, when it came out, kind of made it clear to everybody, ... whether or not those agreements are proper at all, agreeing to future incarceration ...

At this point, counsel for the Department interrupted and the following colloquy occurred:

[THE DEPARTMENT]: Objection, Your Honor. We're not here on a programmatic issue.

[DEFENSE COUNSEL]: Well, you're asking for incarceration. I don't think it's proper.

[THE DEPARTMENT]: In this case. Not whether agreements generally are appropriate.

[DEFENSE COUNSEL]: Well, I don't think it's proper at all, and *Arrington* addresses that head on....

THE COURT: Well, you know, [Defense Counsel], your office has come in here and argued this before with great eloquence. And I've had people in your office, maybe even yourself, indicate that this issue is on appeal. And I haven't seen any decision. I mean, I've read *Arrington*, but I thought that these so-called delayed sentencing agreements were a target for appeal. We were going to finally get a clarification on that. And I don't see any case concerning the delayed sentencing agreements as used by Washington County. I see what *Arrington* says, but it focuses on the present ability to pay. But I don't see, I mean, where is this struck down?

[DEFENSE COUNSEL]: Your Honor, ... I know Your Honor's aware that we've appealed decisions to incarcer-

ate people under these things before and that people have been released as a result of those appeals.

THE COURT: Well, not as a result of, they've been released, I think, pending the appeal.

[DEFENSE COUNSEL]: Oh, no. The Attorney General's Office consented to the dismissal of the case and release. And that's what's happened.

THE COURT: Right. In other words, the appeal was not heard.

\*　　\*　　\*

THE COURT: All right. What do you want to say [Defense Counsel]? Go ahead. Put it on the record.

Ms. Bradford's counsel proceeded to argue that the substantive terms of the DSA signed by Ms. Bradford were inconsistent with the Court of Appeals' analysis in *Arrington*. He also argued that there was no evidence to support a finding that Ms. Bradford had any present ability to pay her purge. In rebuttal, the State did not address whether DSAs were consistent with *Arrington* but only argued that there was sufficient evidence for the court to reasonably infer that Ms. Bradford had the ability to pay the purge amount.

At the conclusion of the hearing, the court addressed Ms. Bradford stating that:

[T]his is all fine legal argument, and I understand it. . . . I think you had the ability to pay to be more substantially compliant than you were. And, therefore, I'm going to impose [incarceration], I'm not going to give you sixty, I'm going to give you thirty days. And what I'm going to do is, I'm going to reduce the dunning or the purge to two hundred and fifty dollars. And I think that's reasonable. You may be receiving food stamps. You may be on medical assistance. That's a benefit. All right. And just to say, just because I'm on food stamps, and I'm getting medical assistance, that pro forma, makes me a non-resource. Well that isn't the case. So I feel that two hundred and fifty dollars is reasonable and she can pay it. She'll be in jail pending.

The circuit court entered an order imposing a sentence of thirty days confinement in the Washington County Detention Center to begin immediately, subject to the $250 purge. At the time, the circuit court found Ms. Bradford's child support payments to be in arrears of $4,307.91. Ms. Bradford's purge amount was subsequently paid by her husband and she was released from jail on March 15, 2010.

ANALYSIS

I.

■ The State argues that the appeal should be dismissed on the grounds that it is moot. The State correctly asserts that Ms. Bradford did not appeal the July 21, 2009 order of the circuit court holding her in contempt and that her appeal of the March 12, 2010 order was mooted when the purge was paid and she was released from confinement. In support, the State cites *Arrington*, 402 Md. at 90, 935 A.2d 432; and *Chase v. Chase*, 287 Md. 472, 473, 413 A.2d 208 (1980), both of which hold that, as a general proposition, an appeal of an order of contempt is moot if the contempt is purged.

Ms. Bradford concedes that her appeal is moot. Nonetheless, she suggests that this Court should address the issues raised in her appeal. We agree.

■ A case is moot when there is "no longer an existing controversy when the case comes before the Court or when there is no longer an effective remedy the Court could grant." *Suter v. Stuckey*, 402 Md. 211, 219–20, 935 A.2d 731 (2007) (citing, among other cases, *Dep't of Human Res. v. Roth*, 398 Md. 137, 143, 919 A.2d 1217 (2007)). Courts do not entertain moot controversies. *Suter*, 402 Md. at 219, 935 A.2d 731. However, as Judge Zarnoch recently explained in *Sanchez v. Potomac Abatement, Inc.*, 198 Md.App. 436, 18 A.3d 100 (2011), there are circumstances in which appellate courts will address the merits of a moot case. The first is where the controversy, even though moot at the time of judicial review, "is capable of repetition but evading review." 198 Md.App. at 443, 18 A.3d 100. The second exception "allows us to express

our views on the merits of a moot case to prevent harm to the public interest.[ 1"] *Id.* at 443, 18 A.3d 100 (footnote omitted). The Court of Appeals applied the latter exception to reach the merits in *Arrington.*

■ The issue in that case was whether the Circuit Court for Baltimore City had the authority to confine "fathers found in contempt for failure to comply with child support orders . . . until such time as they obtain employment through a work release program or satisfy other conditions they are unable to meet in time to avoid the incarceration." 402 Md. at 91, 935 A.2d 432. Noting that such a practice could affect hundreds of fathers subject to child support orders in the City, the Court of Appeals concluded that appellate review was warranted because it was "urgent and imperative that the issue be resolved." *Id.* at 92, 935 A.2d 432.

Similar considerations are present in this case. While the number of affected persons may not be as large as in *Arrington,* DSAs are widely used in Washington County. *See* Assessment p. 27. Ms. Bradford also points to the fact that, when defendants in past proceedings involving DSAs appealed orders imposing jail sentences, the State agreed to release the defendant from confinement if the appeal was dismissed. The State does not contest this assertion. This practice, whatever its basis, makes it unlikely that questions as to the validity of DSAs will receive appellate review. As the circuit court's comments in Ms. Bradford's hearing make clear, there is a need for guidance from an appellate court on this issue. Under such circumstances, appellate review is warranted. *See, e.g., Arrington,* 402 Md. at 92, 935 A.2d 432; *Suter,* 402 Md. at 220–21, 935 A.2d 731.

Counsel for the State informed this Court in oral argument that the "practice in Washington County of filing delayed sentencing agreements has been terminated, . . . it's just too problematic. . . . The Department has issued instructions to the local office in Washington County and they have indicated that they will comply." In response, however, Ms. Bradford's counsel represented to us that there are other child support

enforcement proceedings pending in Washington County that involve DSAs. The State did not question the accuracy of this contention. Thus, the State's prospective disavowal of DSAs does not entirely obviate the desirability of addressing the arguments raised by appellant.[3] We will address the merits of appellant's contentions.[4]

## II.

At one time, the law of contempt in the context of support enforcement proceedings was an area with more than its fair share of "haze and rubble." *Arrington,* 402 Md. at 92, 935 A.2d 432. Many of the uncertainties on this subject were clarified through the adoption of the current versions of Maryland Rules 15–201 through 15–208, which pertain to contempt proceedings. These rules have been explained, interpreted and applied in a series of decisions by the Court of Appeals, including *Arrington,* 402 Md. at 92–106, 935 A.2d 432; *Bryant v. Soc. Servs.,* 387 Md. 30, 46–50, 874 A.2d 457 (2005); and *Jones v. State,* 351 Md. 264, 277–82, 718 A.2d 222

---

**3.** After oral argument, Ms. Bradford filed a Motion to Supplement the Record. She seeks to demonstrate that the Department is continuing to rely on previously-executed DSAs in other support enforcement cases. In light of our resolution of the State's mootness argument, considering the additional material would be carrying coal to Newcastle. We deny the motion.

**4.** The State also raises a preservation issue. It argues that Ms. Bradford has waived her right to contest the July 21, 2009 order holding her in contempt because she did not challenge the validity of that order before the circuit court. We read the record differently.

During the hearing before the circuit court, Ms. Bradford's counsel argued that the Court's opinion in *Arrington* raised an issue as to "whether or not those agreements are proper at all, agreeing to future incarceration." The circuit court certainly understood Ms. Bradford as challenging the validity of DSAs when it expressed its frustration with the absence of appellate guidance on that score:

I've had people in [the Public Defender's] office . . . indicate that this issue is on appeal. And I haven't seen any decision. I mean, I've read *Arrington,* but I thought that these so-called delayed sentencing agreements are targets for appeal. We were finally going to get a clarification on that.

We conclude that the issue of the validity of DSAs is preserved for our review.

(1998). Our task in this case is to apply this now well-developed body of law to the DSA.

■ As Judge Wilner noted for the Court in *Arrington,* 402 Md. at 92, 935 A.2d 432, the universe of contempt proceedings is divided into four quadrants: direct and constructive contempt; and criminal and civil contempt. *See also Ashford v. State,* 358 Md. 552, 563, 750 A.2d 35 (2000). Direct contempt is "a contempt committed in the presence of the judge presiding in court or so near to the judge as to interrupt the court's proceedings." Rule 15–202(b). All other forms of contempt are constructive. Maryland Rule 15–202(a). An obligor's failure to pay court-ordered support payments can constitute constructive contempt. *Ashford,* 358 Md. at 567, 750 A.2d 35.

■ The precise delineation between criminal and civil contempt has been hard to draw at times. *See, e.g., State v. Roll and Scholl,* 267 Md. 714, 728, 298 A.2d 867 (1973); *Winter v. Crowley,* 245 Md. 313, 316–18, 226 A.2d 304 (1967). These difficulties do not concern us as there is no question that a failure to pay child support exposes the obligor to civil contempt and, under appropriate circumstances, criminal contempt proceedings. *Arrington,* 402 Md. at 98, 935 A.2d 432; *see also Dorsey and Craft v. State,* 356 Md. 324, 350, 739 A.2d 41 (1999).

■ There is a conceptual difference between civil and criminal constructive contempt proceedings. As the *Arrington* Court explained:

[A] civil contempt proceeding is intended to preserve and enforce the rights of private parties to an action and to compel obedience to orders and judgments entered primarily for their benefit. Such a proceeding ... is remedial, rather than punitive, in nature, intended to coerce future compliance, and, accordingly, a penalty in a civil contempt must provide for purging. Conversely, the penalty in a criminal contempt proceeding is to punish for past misconduct, which may no longer be capable of remedy. That kind

of penalty is thus punitive in nature and does not require a purging provision but must be determinate.[5]

402 Md. at 93, 935 A.2d 432 (internal quotation marks and citations omitted).

There are distinct procedures for each action. If the State wishes to pursue criminal contempt proceedings because a party failed to abide by a support order, it must do so in a proceeding separate from the civil support proceeding. Rule 15–205(a). A defendant in a criminal contempt proceeding is entitled to "all common law, statutory, and constitutional safeguards for the criminally accused." *Ashford,* 358 Md. at 570, 750 A.2d 35. This includes the obligation of the State to prove each element of the offense beyond a reasonable doubt, including (in a criminal contempt proceeding for failure to pay support) that the defendant's failure to pay was willful. *Id.* at 571–73, 750 A.2d 35. Any sentence imposed by the court must be determinate. Rule 15–207(d)(2). While the sentencing court may "specify any condition under which the sanction may be suspended, modified, revoked, or terminated," Rule 15–207(d)(2), a purging provision is not required in a sentence for criminal contempt. *Arrington,* 402 Md. at 93, 935 A.2d 432.

A party to a civil action may initiate a civil contempt proceeding to secure compliance with a court order. Rule 15–206. If the moving party seeks incarceration as a possible means of compelling compliance, the petition for contempt must so state. Rule 15–206(c)(1). In such a case, the defendant is entitled to counsel and must be properly informed of

---

5. The *Jones* Court explained:

> Sanctions for contempt ordinarily fall into three general categories: (1) determinate sanctions, which are criminal sanctions, such as a jail sentence of one year; (2) coercive sanctions, which are civil sanctions, such as imprisonment until the contemnor complies with an order of the court or a fine to be applied until the contemnor complies; and (3) remedial sanctions, such as a civil fine payable to the plaintiff to compensate the plaintiff for losses suffered as a result of the contemnor's non-compliance.[ ]

351 Md. at 278 (footnote omitted) (citing Dan B. Dobbs, LAW OF REMEDIES § 2.8(2), at 135 (2d ed.1993)).

his or her right to counsel. Rule 15–206(c)(2); *Arrington*, 402 Md. at 98–106, 935 A.2d 432.

In a civil contempt proceeding for failure to pay child support, the moving party must prove, by clear and convincing evidence, that the "alleged contemnor has not paid the amount owed . . . ." Rule 15–207(e)(2). Once this threshold has been met, the obligation shifts to the defendant to prove by a preponderance of the evidence that one or more of the defenses set out in Rule 15–207(e)(3) are present.[6] If the court finds that the moving party has met its burden of proof and none of the defenses apply, it shall enter an order pursuant to Rule 15–207(e)(4), which provides:

> (4) Order. Upon a finding of constructive civil contempt for failure to pay spousal or child support, the court shall issue a written order that specifies (A) the amount of the arrearage for which enforcement by contempt is not barred by limitations, (B) any sanction imposed for the contempt, and (C) how the contempt may be purged. If the contemnor does not have the present ability to purge the contempt, the order may include directions that the contemnor make specified payments on the arrearage at future times and perform specified acts to enable the contemnor to comply with the direction to make payments.

The authority granted to a court to fashion both a sanction and a purge under Rule 15–207(e)(4) is constrained because a defendant in a civil contempt proceeding "must have the ability to avoid both the commencement and the continuation of incarceration." *Arrington*, 402 Md. at 101, 935 A.2d 432 (citing *Jones*, 351 Md. at 282, 718 A.2d 222). Any purge

---

**6.** Rule 15–207(e)(3) provides in relevant part:

When a finding of contempt may not be made. The court may not make a finding of contempt if the alleged contemnor proves by a preponderance of the evidence that (A) from the date of the support order through the date of the contempt hearing the alleged contemnor (i) never had the ability to pay more than the amount actually paid and (ii) made reasonable efforts to become or remain employed or otherwise lawfully obtain the funds necessary to make payment, or (B) enforcement by contempt is barred by limitations . . . .

must be within the present ability of the defendant to perform at the time of sentencing. *Arrington,* 402 Md. at 101, 935 A.2d 432; *Bryant,* 387 Md. at 48, 874 A.2d 457; *Jones,* 351 Md. at 275, 718 A.2d 222. The reason for the rule lies in the coercive, as opposed to punitive, nature of sanctions in a civil contempt proceeding. *Jones,* 351 Md. at 281, 718 A.2d 222 ("If a defendant is unable to pay a purge provision, no amount of time in prison will induce compliance."). Therefore, if the sanction is incarceration and the purge is the payment of money,

> the question will be whether the defendant is then, *on that day,* able to make that payment. The court may not order an incarceration to commence in the future, because the finding of ability to purge must be contemporaneous with when the incarceration is to commence and must remain in existence throughout the period of incarceration.

*Arrington,* 402 Md. at 101, 935 A.2d 432 (citing *Jones,* 351 Md. at 282, 718 A.2d 222) (italicized emphasis in original, underlined emphasis added); *see also Wilson,* 364 Md. at 601–02, 774 A.2d 1123.

Because of the procedural and substantive law differences between civil and criminal contempt proceedings, it is "critical to keep in mind, as a most fundamental principle, that *it is impermissible in a civil contempt action 'to apply sanctions that are available only in a criminal contempt case.'"* *Arrington,* 402 Md. at 101, 935 A.2d 432 (quoting *Bryant,* 387 Md. at 50, 874 A.2d 457) (Emphasis added in *Arrington.*). We now return to the case before us.

## III.

Appellant challenges the DSA, and the court orders emanating from it, on two grounds. The first is that she signed the DSA, which in turn was the basis of the contempt order entered against her, without counsel and without effectively waiving her right to an attorney. Second, she asserts that the operative terms of the DSA were so far at variance with Maryland's law of civil contempt that we should conclude that

it was void and unenforceable. We will address each argument in turn.

## A. The Right to Counsel

■■■■■ Appellant contends that the circuit court erred in relying upon the DSA as a basis for entering the July 27, 2009 order finding her in contempt and imposing a sixty day jail sentence because appellant was not represented by counsel at the time the DSA was executed, and had not effectively waived the right to counsel pursuant to Rule 15–206(e).[7] Without otherwise addressing the issue, the State notes that this argument was not presented to the circuit court and is not preserved for appellate review.

■■■■■ Under most circumstances, the scope of our review is limited to issues "raised in or decided by the trial court." Rule 8–131(a). Appellate courts, however, have the

---

7. The rule reads in pertinent part:
 (e) **Waiver of counsel if incarceration is sought.**
 (1) Applicability. This section applies if incarceration is sought and applies only to court hearings before a judge.
 (2) Appearance in court without counsel.
 (A) If the alleged contemnor appears in court without counsel, the court shall make certain that the alleged contemnor has received a copy of the order containing notice of the right to counsel or was advised of the contents of the notice in accordance with Rule 9–208(d);
 (B) If the alleged contemnor indicates a desire to waive counsel, the court shall determine, after an examination of the alleged contemnor on the record, that the waiver is knowing and voluntary;
 (C) If the alleged contemnor indicates a desire to have counsel and the court finds that the alleged contemnor received a copy of the order containing notice of the right to counsel or was advised of the contents of the notice pursuant to Rule 9–208(d), the court shall permit the alleged contemnor to explain the appearance without counsel. If the court finds that there is a meritorious reason for the alleged contemnor's appearance without counsel, the court shall continue the action to a later time and advise the alleged contemnor that if counsel does not enter an appearance by that time, the action will proceed with the alleged contemnor unrepresented by counsel. If the court finds that there is no meritorious reason for the alleged contemnor's appearance without counsel, the court may determine that the alleged contemnor has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing.

discretion to consider an issue not raised in the court below. *Governor v. Washington Post*, 360 Md. 520, 532 n. 5, 759 A.2d 249 (2000); *Gindes v. Khan*, 346 Md. 143, 151, 695 A.2d 163 (1997). The nature of this review, and the circumstances under which it can appropriately be exercised, was examined by Judge Moylan in *Morris v. State*, 153 Md.App. 480, 507–24, 837 A.2d 248 (2003). Review of an unpreserved issue may be appropriate when we are confronted by an issue that is likely to recur and for which appellate guidance would be desirable. *Burden v. Burden*, 179 Md.App. 348, 355, 945 A.2d 656 (2008); *Morris*, 153 Md.App. at 518–20, 837 A.2d 248.

This is such a case. There are other support enforcement cases pending in Washington County involving DSAs. It is probable that at least some of these were executed by defendants under facts similar to those in this case. The comments of the circuit court at Ms. Bradford's hearing certainly suggest that there is a need for guidance. We will exercise our discretion and address Ms. Bradford's contention. We conclude that the circuit court failed to comply with Rule 15–206(e) and that this failure rendered its entry of the order holding appellant in contempt erroneous.

▮▮▮▮▮ Because the Department's petition to hold Ms. Bradford in contempt sought her incarceration, she was entitled to representation by counsel. *Zetty v. Piatt*, 365 Md. 141, 159, 776 A.2d 631 (2001); *Jones*, 351 Md. at 273–74, 718 A.2d 222; *Redmond v. Redmond*, 123 Md.App. 405, 415, 718 A.2d 668 (1998); *Fields v. Fields*, 74 Md.App. 628, 633–34, 539 A.2d 708 (1988). Concomitant with a defendant's right to counsel is the court's obligation to advise a defendant of that right and to assure itself that, if the right is waived, it is done so knowingly and voluntarily. *Zetty*, 365 Md. at 159, 776 A.2d 631; *Fields*, 74 Md.App. at 633–34, 539 A.2d 708. Maryland Rule 15–206(e) implements this policy. *Redmond*, 123 Md.App. at 416, 718 A.2d 668.

In the DSA, Ms. Bradford admitted that she was in contempt of court, agreed that she had the present ability to pay her child support obligation and address her arrearage, and

consented to a sixty day jail sentence if she failed to do so. While the DSA recited that Ms. Bradford waived her right to an attorney at the conciliation conference, there was nothing in the DSA that suggests that her waiver was knowing or voluntary. On July 27, 2009, based solely upon the DSA, the court held Ms. Bradford in contempt and imposed a sentence, without first providing the advisement required under Rule 15–206(e). Indeed, because the court did not hold a hearing, it made no inquiry whatsoever into whether appellant's waiver was knowing and voluntary.

If, instead of signing the DSA, Ms. Bradford had appeared in court and consented to the July 27, 2009 order, Rule 15–206(e)(2) would have required the court to assure itself that she received a notice pursuant to Rule 15–206(c)(2)(C),[8] and, if

---

8. The rule reads in pertinent part:

(c) **Content of order or petition.**

\* \* \*

(2)(C) if incarceration to compel compliance with the court's order is sought, a notice to the alleged contemnor in the following form:
TO THE PERSON ALLEGED TO BE IN CONTEMPT OF COURT:
1. It is alleged that you have disobeyed a court order, are in contempt of court, and should go to jail until you obey the court's order.
2. You have the right to have a lawyer. If you already have a lawyer, you should consult the lawyer at once. If you do not now have a lawyer, please note:
(a) A lawyer can be helpful to you by:
(1) explaining the allegations against you;
(2) helping you determine and present any defense to those allegations;
(3) explaining to you the possible outcomes; and
(4) helping you at the hearing.
(b) Even if you do not plan to contest that you are in contempt of court, a lawyer can be helpful.
(c) If you want a lawyer but do not have the money to hire one, the Public Defender may provide a lawyer for you.
—To find out if the Public Defender will provide a lawyer for you, you must contact the Public Defender after any prehearing conference or master's hearing and *at least 10 business days before the date of a hearing before a judge.*
—If no prehearing conference or master's hearing is scheduled, you should contact the Public Defender as soon as possible, *at least 10 business days before the date of the hearing before the judge.*
—The court clerk will tell you how to contact the Public Defender.

she had not, to advise her of the notice's contents. If, in this hypothetical court proceeding, Ms. Bradford had indicated a desire to waive counsel, the circuit court would have been required to "determine, after an examination of the alleged contemnor on the record, that the waiver is knowing and voluntary." Rule 15–206(e)(2)(B). The circuit court's failure to do so would have mandated vacating the order. *Redmond,* 123 Md.App. at 417, 718 A.2d 668.

Returning to the case before us, there was no court appearance when the order was signed; instead, Ms. Bradford signed the DSA at the conciliation conference. Rule 15–206(e)(1) states "[t]his section applies if incarceration is sought and *applies only to court hearings before a judge.*" (Emphasis added.) Ms. Bradford acknowledges that she did not sign the DSA in a court proceeding before a judge but suggests that this should not be held against her because the DSA process was designed by the Department to avoid a court proceeding. There is merit to her argument but there is another reason why, despite the language in subsection (1), Rule 15–206(e) should apply to this case. A very brief review of some of the history of the rule is necessary.

Before 2000, Rule 15–206(e)(1) stated that the rule applied to any constructive civil contempt proceeding "if incarceration to compel compliance is sought." At that time, pursuant to what was then Rule 9–207(g), civil contempt petitions in support enforcement matters, including those seeking incarceration, were routinely referred to masters. By its terms, Rule 15–206(e) applied to such proceedings. The Public De-

---

(d) If you want a lawyer but you cannot get one and the Public Defender will not provide one for you, contact the court clerk as soon as possible.

(e) DO NOT WAIT UNTIL THE DATE OF YOUR COURT HEARING TO GET A LAWYER. If you do not have a lawyer before the court hearing date, the judge may find that you have waived your right to a lawyer, and the hearing may be held with you unrepresented by a lawyer.

3. IF YOU DO NOT APPEAR FOR A SCHEDULED PREHEARING CONFERENCE, MASTER'S HEARING, OR COURT HEARING BEFORE THE JUDGE, YOU WILL BE SUBJECT TO ARREST.

fender, however, refused to provide representation to indigent persons in master's proceedings. *Thrower v. Support Enforcement*, 358 Md. 146, 149 n. 2, 747 A.2d 634 (2000).

In 2000, the Rules Committee proposed changes to Rule 15–206(e)(1) together with amendments to what was then Rule 9–207(g) (now Rule 9–208(d)). The Reporter's Note to the proposed amendment to Rule 15–206(e) stated that "the two rule changes ensure that when incarceration of the alleged contemnor is a possibility, the matter will be heard by a judge rather than by a master." 27 Md. Reg. 26 (January 14, 2000).[9] In *Thrower*, 358 Md. at 149 n. 2, 747 A.2d 634, the Court of Appeals discussed the amendments to the two rules, which were pending before the Court when the case was decided. The *Thrower* Court identified two reasons for the rule changes. First, the amendments would eliminate administrative problems caused by the Public Defender's refusal to provide representation to indigent respondents in proceedings before masters. *Id.* The second, and more fundamental reason for the rule changes was that "*as a matter of sound judicial policy, incarceration should be ordered only by a judge on a record developed before the judge.*" *Id.* (emphasis added).

An intended effect of the 2000 amendments was to make civil contempt proceedings involving possible incarceration the exclusive province of judges. There is nothing in the rule, or its history, that suggests that a determination as to whether a defendant's waiver of counsel was knowing and voluntary could be made by a support enforcement worker or anyone other than a judge. For a court to find appellant in contempt and impose a sentence of incarceration based solely upon the DSA, without an independent inquiry by the court as to whether appellant voluntarily and knowingly waived her right to counsel, would stand the purpose of Rule 15–206(e) on its head. The circuit court erred in doing so.

---

**9.** The Rules Committee's proposals were eventually adopted by the Court of Appeals with modifications not directly pertinent to the issues before us. *See* 27 Md. Reg. 1204–07 (June 30, 2000).

## (2) Illegal Sentence

■ Ms. Bradford also contends that the DSA is void and unenforceable because it provided for the imposition of an illegal sentence. The State does not address appellant's arguments on this score; rather it contents itself with the assertion that the circuit court's findings at the hearing resulting in Ms. Bradford's incarceration were not clearly erroneous.[10] Once again, we agree with appellant.

■ When the circuit court found Ms. Bradford in contempt on July 27, 2009, it sentenced her to a jail sentence of sixty days, to begin on October 23, 2009. While the order provided that Ms. Bradford could avoid incarceration by addressing her support arrearages prior to the latter date, it did not provide a purging mechanism after incarceration was to begin. It was a determinate sentence without a post-confinement purge provision, a sentence reserved for criminal contempt proceedings. Thus, the July 27, 2009 order effectively imposed a criminal sanction, and, to boot, imposed it to begin in the future. Such a sentence is illegal in a civil contempt proceeding and is manifestly irreconcilable with the Court of Appeals' clear teaching in *Arrington,* 402 Md. at 101, 935 A.2d 432. Even though Ms. Bradford signed the DSA (albeit without counsel), a defendant cannot consent to an illegal sentence. *Bryant,* 387 Md. at 42, 874 A.2d 457; *Holmes v. State,* 362 Md. 190, 195–96, 763 A.2d 737 (2000).

■ In addition, when the circuit court held appellant in contempt on July 27, 2009, it did not inquire whether she had the present ability to satisfy the purge it imposed at that time, because it did not hold a hearing. We place no significance whatsoever in the DSA's recitation that appellant had the present ability to satisfy the purge. She was not represented by counsel when she signed the DSA, and nothing in the

---

10. Similarly, counsel for the Department did not address appellant's argument that the DSA was invalid before the circuit court. Thus, in terms of legal advocacy, the DSA is very much an orphan.

record suggests that she had such an ability at any point in this proceeding.[11]

In *Human Relations v. Dept. of Parks*, 166 Md.App. 33, 47, 887 A.2d 64 (2005), this Court considered an analogous situation involving a consent judgment entered on the basis of a settlement agreement that was *ultra vires* as to one of the parties, and held that the judgment was void and unenforceable. The DSA itself called for the imposition of an illegal sentence and was unenforceable for that reason.

## IV.

As the initial order holding appellant in contempt of court was entered in error, it is not necessary for us to consider whether the circuit court erred in the March 12, 2010 hearing. The State argues that, because the circuit court modified the sentence imposed by its earlier order and reduced the purge amount, any previous infirmity was cured. We cannot agree with this proposition because, at that hearing, the circuit court did not address the underlying issue of whether Ms. Bradford was in contempt in the first place.

In conclusion, errors by the circuit court, and defects in the DSA itself, would have justified reversing the orders holding appellant in contempt and sentencing her to incarceration had this appeal not been moot. However, the fact remains that Ms. Bradford's husband paid the modified purge amount imposed by the circuit court at the conclusion of the March 12, 2010 hearing. Thus, her appeal is moot and our mandate must reflect this reality. *Cottman v. State*, 395 Md. 729, 748, 912 A.2d 620 (2006); *Sanchez*, 198 Md.App. at 444 n. 5, 18 A.3d 100.

**APPEAL DISMISSED. WASHINGTON COUNTY TO PAY COSTS.**

---

11. While the Department argued that appellant had the present ability to make the payments called for in the DSA at the March 12, 2010 hearing, the sole basis for the contention was the DSA itself.